[No. 76292-9. En Banc.]
Argued September 27, 2005.   Decided October 26, 2006.

VALARIE GILDON ET AL., *Respondents*, v. SIMON PROPERTY GROUP, INC., *Petitioner*.

*James H. Jordan, Jr.*, and *Brian W. Esler* (of *Miller Nash, L.L.P.*), for petitioner.

*Linda L. Brain*, for respondents.

¶1 MADSEN, J. — Valarie Gildon filed suit against Simon Property Group, Inc., and several fictitious defendants for personal injuries based on negligence and premises liability theories. She did not expressly name the premises owner, Northgate Mall Partnership (Northgate

Mall Partnership or Partnership), as a defendant. Based on this failure, Simon Property moved to dismiss Gildon's suit under CR 12(b)(7). Gildon moved to amend her complaint to add the Partnership and Simon Property Group, L.P., but the trial court denied the motion, ruling that the amendment would not relate back due to Gildon's inexcusable neglect. The court also found the Partnership was a necessary and indispensable party under CR 19 and, since the statute of limitations had run, the court dismissed all of Gildon's claims. The Court of Appeals reversed, holding that Northgate Mall Partnership was not an indispensable party.

¶2  Two issues are presented in this case: (1) whether in a premises liability action a duty of care is owed only by a title owner of property and (2) whether a partnership is a necessary and indispensable party under CR 19 in an action against a general partner for acts committed within the scope of partnership business under chapter 25.05 RCW, Washington's Revised Uniform Partnership Act (RUPA). We hold that a duty of care is owed by a "possessor" of property, consistent with long-standing law, and that joinder of Northgate Mall Partnership is not required by RUPA, and we affirm the Court of Appeals.

## FACTS

¶3  On August 6, 2000, Valarie Gildon received a head injury when she slipped and fell while walking on wet tile in the common walkway inside Northgate Mall. Both the Seattle Fire Department and paramedics were called, and she was transported to Northwest Hospital for treatment. She asserts that she has suffered severe personal injuries as the result of her fall, in an amount to be proved at trial.

¶4  Gildon is the owner and manager of Valarie's Cleaning Services. She was retained to perform cleaning services for Auntie Anne's Pretzels, a food service tenant in Northgate Mall. Gildon alleges she fell while performing her cleaning services.

¶5 In June 2003, Gildon and her husband brought suit against Simon Property. Prior to bringing the lawsuit, the record reflects that Gildon's attorney had corresponded with Simon Property's insurance carrier, providing Gildon's medical records, and with Simon Property's attorneys. Simon Property, headquartered in Indiana, is engaged in "the ownership and management of income-producing properties, primarily regional malls and community centers." Clerk's Papers (CP) at 53.[1]

¶6 Simon Property is the "largest publicly traded retail real estate company" in the United States, with a total market capitalization of approximately $22 billion, with at least 240 income-producing properties, including Northgate Mall. *Id.* Simon Property is a corporation that is treated as a "real estate investment trust" (REIT), which allows it to not pay United States federal income tax on its profits, assuming it meets certain requirements. *Id.* For example, at least 75 percent of its assets must consist of real estate assets, cash, and government securities. 26 U.S.C. § 856(c)(4)(A).[2] Simon Property is registered to do business in Washington.

¶7 In her complaint, Gildon alleged, among other things, that Simon Property was negligent in maintaining the physical premises that it "owned, occupied, leased, subleased, constructed, repaired, designed, controlled, possessed, maintained, managed and/or operated" and, as a direct and proximate result of its negligence, caused severe injury and damage to Gildon. CP at 5. Gildon contended

---

[1] According to its web site, "Simon Property Group, Inc., headquartered in Indianapolis, Indiana, is a real estate investment trust engaged in the ownership and management of income-producing properties, primarily regional malls and community shopping centers. Through its subsidiary partnerships, it currently owns or has an interest in 240 properties containing an aggregate of 183 million square feet of gross leasable area in 36 states, as well as nine assets in Europe and Canada." CP at 53 (Simon Property Group, Inc., at http://www.simon.com).

[2] This requirement was intended to assure that the bulk of REIT investments be either equity or mortgage interests in real property. H.R. REP. No. 2020, 86th Cong., 2d Sess. 6 (1960) (quoted in 1960-2 C.B. 822). Additional requirements of a REIT include that it must distribute 90 percent of its taxable income to its shareholders. *See* 26 U.S.C. § 857(a).

that Simon Property, as the "owner and/or manager" of Northgate Mall, has a duty to use ordinary care and diligence to design, build, keep, and maintain the common walkways in a condition reasonably safe for their intended use. *Id.* at 6. By breaching its duties and causing Gildon's accident, she contended that Simon Property is liable for the injuries and damages sustained by Gildon, an invitee on the property.

¶8 Gildon claimed that Simon Property's negligence includes, but is not limited to, failure to properly maintain the premises, failure to provide safe premises, failure to comply with the recognized standards for common walkway design and/or safety, and failure to warn of a dangerous condition. Additionally, Gildon contended that Simon Property was negligent in failing to adequately instruct and train its agents, employees, and/or servants in cleaning standards and proper use of equipment; failing to properly maintain the janitorial/maintenance equipment; and failing to warn others of unsafe conditions.[3]

¶9 Simon Property moved to dismiss the case on two grounds: (1) a judgment against Simon Property would be uncollectible because Gildon named the wrong party, Simon Property, who was not the owner of Northgate Mall and was only a general partner in a partnership that had title to the mall, and (2) there was no basis for liability against Simon Property or Northgate Mall Partnership because plaintiff was a trespasser at the time of the accident.

¶10 According to Simon Property, Gildon's negligence claim was "really against the owner of the Northgate Mall, which is 'Northgate Mall Partnership.' " CP at 105. Simon Property submitted evidence illustrating that Northgate Mall Partnership, a Delaware general partnership, is the

---

[3] As permitted by CR 10(a)(2), Gildon also named "Defendants XYZ Corporation 1-5" and "Defendants John Doe and Jane Doe 1-5," stating that they too were negligent in their omission or commission of acts. CP at 7. CR 10(a)(2) (providing that when a plaintiff is ignorant of the name of the defendant, it shall be so stated in his pleading, and such defendant may be designated in any pleading or proceeding by any name, and when his true name shall be discovered, the pleading or proceeding may be amended accordingly).

title owner of Northgate Mall. Additionally, Simon Property stated that Simon Property Group, L.P., owns 99.99 percent of the Northgate Mall Partnership and that Simon Property is "merely a 0.01% general partner." CP at 25; Simon Prop. Group, Inc.'s, Pet. for Supreme Ct. Review at 3.[4] Despite Gildon's claim that Simon Property's agents and other sources told her that Simon Property was the owner of Northgate Mall, Simon Property claimed that it was inexcusable neglect to fail to identify the title owner of property in a premises liability negligence case. As the statute of limitations had run, Gildon could add the Partnership as a party under CR 15(c) only if the amendment related back to the date of the original pleading.[5] Accordingly, Simon Property claimed that Gildon's motion to amend the complaint to add the partnership could not relate back to the date of the original pleading under CR 15(c).[6]

¶11 Simon Property also claimed that if Gildon were able to prevail in her negligence claim against Simon Property,

---

[4] The statement that Simon Property is a "mere" 0.01 percent general partner is misleading and incomplete. Simon Property reports on its web site and in public filings with the Securities and Exchange Commission that it has a 100 percent interest in Northgate Mall through its subsidiary partnerships and that Simon Property Group, L.P. (the 99.99 percent owner/general partner of the Delaware partnership), is its subsidiary. *See* CP at 278-80; Simon Property Group, L.P., and Simon Property Group, Inc., Form 10-K Annual Report.

[5] CR 15(c) provides that "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Under CR 15(c), an amendment adding or changing a party relates back if the new party (1) has received such notice of the institution of the action that it will not be prejudiced in maintaining its defense on the merits and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against it. Additionally, inexcusable neglect may preclude relation back under CR 15(c). *N. St. Ass'n v. City of Olympia*, 96 Wn.2d 359, 368-69, 635 P.2d 721 (1981), *overruled in part on other grounds by Sidis v. Brodie/Dohrmann, Inc.*, 117 Wn.2d 325, 815 P.2d 781 (1991).

[6] Gildon moved to amend her complaint, adding Northgate Mall Partnership and Simon Property Group, L.P., and requested that amendment relate back because (1) each had received notice of this institution of the action so that he will not be prejudiced in maintaining his defense on the merits and (2) each knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him. CR 15(c). Additionally, Gildon claimed her actions in not naming the parties were not due to inexcusable neglect.

the claim would be "futile" because according to its interpretation of RCW 25.05.130(4), all claims against general partners must be brought first against the partnership in order to obtain relief.[7] Under its interpretation of the statute, Gildon would not be able to collect a judgment obtained against Simon Property, a general partner in the Partnership, because the Partnership was not a party in the suit. Accordingly, since Simon Property asserted that the Partnership could not be added to the suit under CR 15(c), the suit had to be dismissed under CR 12(b)(7) for failure to join an indispensable party.[8]

¶12 As to its second basis for dismissal, Simon Property argued the case should be dismissed because Gildon was a trespasser in the common walkway area of Northgate Mall, resulting in neither Simon Property nor Northgate Mall Partnership having liability for Gildon's alleged injuries. Gildon and her husband disagreed, submitting evidence that she was an invitee.

¶13 The trial court denied Gildon's motion to amend her complaint to add Northgate Mall Partnership and Simon Property Group, L.P.[9] It also granted Simon Property's

---

[7] RCW 25.05.130(4) provides that:

A judgment creditor of a partner may not levy execution against the assets of the partner to satisfy a judgment based on a claim against the partnership unless the partner is personally liable for the claim under RCW 25.05.125, and:

(a) A judgment based on the same claim has been obtained against the partnership and a writ of execution on the judgment has been returned unsatisfied in whole or in part;

(b) The partnership is a debtor in bankruptcy;

(c) The partner has agreed that the creditor need not exhaust partnership assets;

(d) A court grants permission to the judgment creditor to levy execution against the assets of a partner based on a finding that partnership assets subject to execution are clearly insufficient to satisfy the judgment, that exhaustion of partnership assets is excessively burdensome, or that the grant of permission is an appropriate exercise of the court's equitable powers; or

(e) Liability is imposed on the partner by law or contract independent of the existence of the partnership.

[8] CR 12(b)(7) allows dismissal for "failure to join a party under rule 19."

[9] Despite Simon Property's failure to offer argument or evidence that it was inexcusable neglect to fail to name Simon Property Group, L.P. (the large

motion to dismiss under CR 12(b)(7) based upon "the failure to join [Northgate Mall Partnership], a necessary and indispensable party under CR 19(b)." CP at 441, 452.

¶14 On review, the Court of Appeals concluded that the trial court did not abuse its discretion when it denied Gildon's motion to amend because, it held, "due diligence is irrelevant to the issue of inexcusable neglect in cases involving real property." *Gildon v. Simon Prop. Group, Inc.*, noted at 123 Wn. App. 1004, 2004 Wash. App. LEXIS 1927, at *7 (citing *Iwai v. State*, 76 Wn. App. 308, 884 P.2d 936 (1994), *aff'd*, 129 Wn.2d 84, 915 P.2d 1089 (1996)).[10] However, the court pointed out that Gildon alleged a number of negligence claims against Simon Property in capacities other than "owner" of Northgate Mall, including as operator, manager, occupier, possessor, and lessor. *See id.* at *11. Since these claims do not depend at all on Northgate Mall Partnership's presence in the litigation, the Court of Appeals concluded that Northgate Mall Partnership was not an indispensable party under CR 19(b). Accordingly, it held that the trial court had abused its discretion when it dismissed Gildon's suit under CR 12(b)(7).

operating partnership, a subsidiary of Simon Property and 99 percent owner/general partner of the Northgate Mall Partnership), the trial court did not distinguish between the two entities, Simon Property Group, L.P., and Northgate Mall Partnership, in denying Gildon's motion to amend.

[10] Under CR 15(c), an amendment to add a party may relate back if two factors in the rule are present: (1) lack of prejudice and (2) notice. A third factor, inexcusable neglect, added by the court was not intended to alter the rule favoring relation back, but rather to prevent harmful gamesmanship. *See, e.g., N. St. Ass'n*, 96 Wn.2d at 368-69 (plaintiffs challenging a plat approval decision failed to name the affected property owners even though aware of these parties); *Pub. Util. Dist. No. 1 of Klickitat County v. Walbrook Ins. Co.*, 115 Wn.2d 339, 349, 797 P.2d 504 (1990) (plaintiffs made a conscious decision not to join parties). As this court noted in *Beal v. City of Seattle*, 134 Wn.2d 769, 782, 954 P.2d 237 (1998), the purpose of CR 15(c) is to permit amendment, provided the defendant is not prejudiced and has notice. A broad construction of the inexcusable neglect standard undermines this rule and interferes with the resolution of legitimate controversies. Thus, the inexcusable neglect standard should not be applied to preclude relation back under CR 15(c) where the defendant's actions or misrepresentations mislead the plaintiff, as occurred in this case. Although Gildon has not petitioned for review on this issue, it is worth noting that in the case cited by the Court of Appeals, *Iwai*, the court found that Iwai failed to show that the property owner she sought to join after the statute of limitations had run knew or should have known of the existence of her claim, unlike the case here.

¶15 When the factors in CR 19(b) were properly applied, the Court of Appeals found the trial court should have concluded: (1) Northgate Mall Partnership would not be prejudiced by its absence in the lawsuit, (2) a judgment against Simon Property would likely compensate Gildon adequately, and (3) Gildon would have no other remedy to pursue if her suit against Simon Property was dismissed. As a result, the Court of Appeals reversed the dismissal of the claim against Simon Property because equity and good conscience dictated that the action should proceed.

## ANALYSIS

¶16 This court has not previously considered the standard of review for a trial court's dismissal under CR 12(b)(7) for failure to join an indispensable party under CR 19. However, considering the nature of the balancing and factual inquiry required by CR 19, we agree with the majority of federal courts that have considered the issue and believe that abuse of discretion is the appropriate standard of review, with the caveat that any legal conclusions underlying the decision are reviewed de novo. *See, e.g., Equal Employment Opportunity Comm'n v. Peabody W. Coal Co.*, 400 F.3d 774, 778 (9th Cir. 2005) (in dismissal for failure to join an indispensable party, court generally reviews for an abuse of discretion the district court's decision regarding joinder but reviews de novo any legal conclusions underlying that decision), *cert. denied*, 546 U.S. 1150 (2006); *Davis v. United States*, 343 F.3d 1282, 1289 (10th Cir. 2003) (same); 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1608, at 91 (3d ed. 2001) (to a substantial degree, the effective operation of CR 19 depends upon the careful exercise of discretion by the trial court, citing cases). *See also Citizen Band Potawatomi Indian Tribe v. Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994) (court reviews Fed. R. Civ. P. 12(b)(7) dismissal for an abuse of discretion); *Rapoport v. Banco Mexicano Somex, S.A.*, 668 F.2d 667, 669 (2d Cir. 1982) (dismissal under Fed. R. Civ. P. 12(b)(7) reviewed for an abuse of

discretion); *HS Res., Inc. v. Wingate*, 327 F.3d 432, 438-39 (5th Cir. 2003) (court reviews district court's decision to dismiss for failure to join an indispensable party for an abuse of discretion); *United States ex rel. Steele v. Turn Key Gaming, Inc.*, 135 F.3d 1249, 1251 (8th Cir. 1998) (court reviews district court's dismissal under Fed. R. Civ. P. 19(b) for an abuse of discretion); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 250 (4th Cir. 2000) (the district court's Fed. R. Civ. P. 19 dismissal of action is reviewed for abuse of discretion).

■■ ¶17 A court abuses its discretion when its decision is manifestly unreasonable, or exercised on untenable grounds or for untenable reasons. *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, ¶14, 132 P.3d 115 (2006). An abuse of discretion is found if the trial court relies on unsupported facts, takes a view that no reasonable person would take, applies the wrong legal standard, or bases its ruling on an erroneous view of the law. *Id.* Dismissal under CR 12(b)(7) is a drastic remedy, and as we prefer trials on the merits, it should be employed sparingly when there is no other ability to obtain relief. *See, e.g.*, 7 WRIGHT, MILLER & KANE, *supra*, § 1609, at 130 (in general, dismissal should be ordered only when a defect cannot be cured and serious prejudice or inefficiency will result); *Nat'l Union Fire Ins. Co.*, 210 F.3d at 250 (dismissal of a case is a drastic remedy which should be employed only sparingly).

■■ ¶18 Under CR 19, a trial court undertakes a two part analysis. First, the court must determine whether a party is needed for just adjudication. *Crosby v. Spokane County*, 137 Wn.2d 296, 306, 971 P.2d 32 (1999); CR 19(a).[11]

---

[11] CR 19(a) provides in part:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (A) as a practical matter impair or impede his ability to protect that interest or (B) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

Second, if an absent party is needed but it is not possible to join the party, then the court must determine whether in "equity and good conscience" the action should proceed among the parties before it or should be dismissed, the absent party being thus regarded as indispensable. *Crosby*, 137 Wn.2d at 306-07; CR 19(b).[12] The factors to be considered by the court include: (1) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; (2) if there is prejudice, the extent to which, by protective provisions in the judgment, by shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. CR 19(b); *Crosby*, 137 Wn.2d at 306-07. In analyzing whether a party is a necessary and indispensable party, CR 19 "calls for determinations that are heavily influenced by the facts and circumstances of individual cases." 7 WRIGHT, MILLER & KANE, *supra*, § 1604, at 39.[13] The burden of proof for establishing indispensability is on the party urging dismissal. *Id.* § 1609, at 129 (the burden is on the party raising the defense to show that the person who was not joined is needed for just adjudication).

¶19 Simon Property claims that Gildon's premises liability action is "really against the owner of the Northgate Mall," the Partnership, because the title owner would be liable for any injury occurring at the mall. According to

[12] CR 19(b) provides in part:

If a person joinable under (1) or (2) of section (a) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable.

[13] "In contrast to the flexibility of the equity-and-good-conscience test, pre-1966 practice was criticized as too mechanistic in that it lent itself more to a thoughtless reiteration of formulae than to a decision based on the underlying policy considerations that should lead a court to find a particular person indispensable. In particular, the conclusion that a person automatically should be categorized as indispensable if that person's interest was joint rather than [joint and] several is characteristic of the woodenness of many pre-1966 decisions." 7 WRIGHT, MILLER & KANE, *supra*, § 1607, at 86. Washington has embraced the flexible and pragmatic approach of the revised rules. *See, e.g., Aungst v. Roberts Constr. Co.*, 95 Wn.2d 439, 443-44, 625 P.2d 167 (1981).

Simon Property, Northgate Mall Partnership's title, by itself, makes the Partnership a necessary and indispensable party under CR 19. Simon Property also argues that because Gildon's claims against Simon as "operator, manager, occupier, lessor or lessee, sublessee or sublessor, builder, repairer, designer, controller, possessor, maintainer, and instructor" are based on conduct carried on within the scope of the partnership business, the Partnership was a necessary and indispensable party because RCW 25.05.130(4) requires that a partnership be named in a lawsuit based on the tortious conduct of a partner. Thus, according to Simon Property, the Court of Appeals erred in reversing the trial court's ruling dismissing Gildon's claims against it.

¶20 Addressing the issue of ownership first, under long-standing law, the test in a premises liability action is whether one is the "possessor" of property, not whether someone is a "true owner" (the titleholder) of property. *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 127-28, 875 P.2d 621 (1994) (a duty of care is owed by the *possessor* of the property). *See also* 65A C.J.S. *Premises Liability* § 381 (2000) (liability for a dangerous condition on property is predicated upon the occupancy, ownership, control, possession, or special use of such premises; the existence of one or more of these elements is sufficient to give rise to a duty to exercise reasonable care). A "possessor" of land is (a) a person who occupies the land with the intent to control it; or (b) a person who has occupied land with intent to control it, if no other person has subsequently occupied it with intent to control it; or (c) a person who is entitled to immediate occupation of the land, if no other person is in possession under (a) or (b) above. RESTATEMENT (SECOND) OF TORTS § 328E (1965).

¶21 Possession of land, giving rise to the duty of care, does not require actual title or ownership. *See, e.g.*, 65A C.J.S. *Premises Liability* § 388; *Egede-Nissen v. Crystal Mountain, Inc.*, 93 Wn.2d 127, 606 P.2d 1214 (1980) (operator that did not own title to land owed duty, and the extent

of duty depended on the status of the plaintiff). Liability is imposed on the possessor of land and one acting on behalf of the possessor. *Williamson v. Allied Group, Inc.*, 117 Wn. App. 451, 459, 72 P.3d 230 (2003), *review denied*, 151 Wn.2d 1039, 95 P.3d 352 (2004). Thus, Simon Property's reliance on Northgate Mall Partnership being "the true owner" has been soundly rejected by long-standing law on premises liability. A premises liability action may proceed against the "possessor" of the property, and Gildon has alleged that Simon Property possessed, maintained, and/or operated the Northgate Mall. *See, e.g., Egede-Nissen*, 93 Wn.2d 127 (suit proceeded against the possessor of the property, an occupier of the property, not the title owner).

¶22 We agree with the Court of Appeals that Northgate Mall Partnership is not a necessary and indispensable party based on its capacity as title owner of the premises at issue as a matter of law.

¶23 Simon Property is also wrong when it contends that even if the Gildons may hold it liable for its own negligence, Northgate Mall Partnership is still an indispensable party based on RUPA, chapter 25.05 RCW.[14] Simon Property argues that the Partnership is indispensable because, under RCW 25.05.130(4), a plaintiff must sue the partnership and exhaust the partnership assets before collecting from an individual partner for any negligence that occurs within the scope of partnership business.[15] Thus, Simon Property asserts that in the absence of the Partnership, "complete

---

[14] The legislature adopted RUPA in 1998. LAWS OF 1998, ch. 103. RUPA replaced the uniform partnership act, which had been in effect in this state since 1945. LAWS OF 1945, ch. 137.

[15] RCW 25.05.130(4) provides:

A judgment creditor of a partner may not levy execution against the assets of the partner to satisfy a judgment based on a claim against the partnership unless the partner is personally liable for the claim under RCW 25.05.125, and:

    (a) A judgment based on the same claim has been obtained against the partnership and a writ of execution on the judgment has been returned unsatisfied in whole or in part;

    (b) The partnership is a debtor in bankruptcy;

    (c) The partner has agreed that the creditor need not exhaust partnership assets;

relief cannot be accorded" to Gildon under CR 19(a)(1) and any judgment in favor of Gildon will not be "adequate" under CR 19(b)(3).

¶24 It is black letter law that when a partner acts within the scope of the partnership business, the partner *expands* liability. *See, e.g.,* J. WILLIAM CALLISON & MAUREEN A. SULLIVAN, PARTNERSHIP LAW AND PRACTICE: GENERAL AND LIMITED PARTNERSHIPS § 8:1 (2004) (the agency power is implied in the partnership relationship, and as long as the relationship continues, every partner may act within the scope of the partnership business and thereby risk the partnership's assets and create liability for his or her copartners).[16] It is also black letter law that a partner *remains* liable for its own actions. *See, e.g.,* II ALAN R. BROMBERG & LARRY E. RIBSTEIN, BROMBERG AND RIBSTEIN ON PARTNERSHIP § 5.08 (2006) (partners are liable for their own acts).

¶25 Whether the partner acted within the scope of the partnership business is relevant to the question of whether the partner is entitled to indemnification and/or contribution from the partnership and/or the partners, but it is not relevant in deciding whether a plaintiff may proceed directly and solely against the partner for his or her own tortious acts.[17] While it is true that a partner who

(d) A court grants permission to the judgment creditor to levy execution against the assets of a partner based on a finding that partnership assets subject to execution are clearly insufficient to satisfy the judgment, that exhaustion of partnership assets is excessively burdensome, or that the grant of permission is an appropriate exercise of the court's equitable powers; or

(e) Liability is imposed on the partner by law or contract independent of the existence of the partnership.

[16] RCW 25.05.100 provides, "[e]ach partner is an agent of the partnership for the purpose of its business."

[17] Simon Property regards any claim based on an act committed within the scope of the partnership as a per se "claim against the partnership" under RCW 25.05.130(4). Thus, in Simon Property's view, the statute relieves a partner of direct liability even for its own tortious conduct. Such a reading would render RCW 25.05.130(4)(e) superfluous and lead to absurd results. Following Simon Property's interpretation, tortfeasors could effectively shield themselves from liability by erecting complex partnership structures that would make it impractical for a claimant to bring suit. Or a partner could keep silent about the existence

commits wrongs while acting within the scope of the partnership business may be indemnified by the partnership and copartners, indemnification has nothing to do with liability owed to third parties for one's own actions. Rather, the indemnification right of a partner is an implied contract arising out of the agreement to share profits and losses in designated proportions. Indemnification resolves the apparent conflict between a partner's joint and several liability where a partner may be called upon to pay the entire amount of a partnership debt to third parties and the proportionate sharing of profits and losses among copartners. II BROMBERG & RIBSTEIN, *supra*, § 6.02(f)(1).

¶26  If Simon Property had been acting outside the scope of its partnership business, it would have no right to indemnification (assuming the partnership agreement provided such a right in the first place, given that Simon Property's entire business is managing over 200 malls and other property, not just Northgate Mall, and that the 99 percent copartner of the partnership is its subsidiary), but whether indemnification is available does not limit liability for one's own tortious conduct to third parties. Indeed, this proposition is directly contrary to the purposes of partner-

of the partnership until the statute of limitations has run, then move for dismissal. In reforming RUPA's liability provisions, the drafters intended to enable creditors to more easily enforce their claims against a partnership by eliminating the procedural complexities arising from joint liability; RUPA was not intended to become a trap for the unwary or to abrogate the centuries old rule that tortfeasors are liable for their own tortious conduct. *See* UNIF. P'SHIP ACT (UPA) § 307(d) cmts. (1), (2), 6 U.L.A. 125 (1997) (noting that § 307 (RCW 25.05.130) "is designed to simplify suits by and against a partnership" and will "simplify and reduce the cost of litigation"); UPA Revision Subcomm., Comm. on P'ships & Unincorporated Bus. Orgs., Am. Bar Ass'n, *Should the Uniform Partnership Act Be Revised?*, 43 BUS. LAW. 121, 126 (1987) (imposition of joint and several liability is necessary to "eliminate a number of procedural problems that affect the rights of creditors to enforce claims against a partnership"). In particular, Simon Property fails to take account of the drafters' comment to § 307(d)(5) (RCW 25.05.130(4)(e)) ("Liability is imposed on the partner by law or contract independent of the existence of the partnership."), which explains, "a judgment creditor may proceed directly against the assets of a partner who is liable independently as the primary tortfeasor, but must exhaust the partnership's assets before proceeding against the separate assets of the other partners who are liable only as partners." UPA § 307(d) cmt. (4), 6 U.L.A. 125 (1997). The comment clarifies that the exhaustion requirement does not permit tortfeasors to elude direct liability for their own torts.

ship law (joining of efforts to share in profits and losses and incurring expansive joint and several liability for others' actions; *see* II BROMBERG & RIBSTEIN, *supra*, § 6.02(f)(1)) and principles of tort law (requiring compensation from persons who owed a duty, breached that duty, and caused injury; *see N. Pac. Ry. v. Tacoma Junk Co.*, 138 Wash. 1, 244 P. 117 (1926) (partners who shared in the profits for conversion, together with their agent cooperating in the purchase and sale of property converted, are all liable as joint tortfeasors for the value of the property)).

¶27 Simon Property's contention that RUPA has fundamentally altered partnership liability is incorrect. Under the uniform partnership act, partners were jointly and severally liable for torts and breaches of trust, and jointly liable for contracts and other debts. Former RCW 25.04.150 (1985). Under RUPA, partners are jointly and severally liable for *all* partnership obligations, without exceptions for "mere" or small partners. RCW 25.05.125(1) ("all partners are liable jointly and severally for all obligations of the partnership").[18] Furthermore, while partners are permitted to modify many of the statutory provisions in their partnership agreement, partners are not permitted to modify joint and several liability to third persons. RCW 25.05.015(2)(j) (a partnership agreement may not restrict the rights of third parties under this chapter).[19]

---

[18] RCW 25.05.125(1) provides limited exceptions for joint and several liability of partners to third parties: (1) a partner is not personally liable if the partnership obligation was incurred before the person was admitted as a partner; (2) a partner is not personally liable if the obligation of the partnership was incurred while the partnership is a limited liability partnership (LLP); and (3) if partners of an LLP or foreign limited liability partnership are required to be licensed to provide professional services and the partnership failed to maintain a policy of professional liability insurance, among other types of evidence of financial responsibility, then the partners shall be personally liable to the extent that had such insurance or other evidence of financial responsibility been maintained, it would have covered the liability in question. In this case, none of the exceptions/modifications to joint and several liability applies, the Northgate Mall Partnership is a general partnership, and Simon Property does not dispute that it was a partner in the partnership during the relevant time periods.

[19] RCW 25.05.015(1) provides that "relations among the partners and between the partners and the partnership are governed by the partnership agreement. To the extent the partnership agreement does not otherwise provide, this chapter

▇ ¶28 Applying well-settled rules of statutory construction and common sense, and considering RUPA as a whole, a better reading of RCW 25.05.130(4) is that when a plaintiff sues the partnership, he or she cannot enforce the judgment against a partner who is not personally liable without first exhausting partnership assets. But a plaintiff need not sue the partnership as a precondition for proceeding against a partner. This is so because nothing in the statute *requires* the plaintiff to sue the partnership in addition to an individual partner. The discretionary language of the other provisions of RCW 25.05.130 supports our reading:

> (1) A partnership *may* sue and be sued in the name of the partnership.[20]

> (2) An action *may* be brought against the partnership and, to the extent not inconsistent with RCW 25.05.125, any or all of the partners in the same action or in separate actions.

> (3) A judgment against a partnership is not by itself a judgment against a partner. A judgment against a partnership may not be satisfied from a partner's assets unless there is also a judgment against the partner.

RCW 25.05.130(1)-(3) (emphasis added).

¶29 RCW 25.05.130(4) addresses postjudgment execution procedure, not the question of a partner's liability. *See Seafirst Ctr. Ltd. P'ship v. Erickson*, 127 Wn.2d 355, 898

---

governs relations among the partners and between the partners and the partnership." RCW 25.05.015(2) provides 10 subjects on which a partnership agreement may not vary or alter or has limited flexibility in doing so.

[20] Under UPA, it had been unclear whether a plaintiff could bring suit against the partnership itself, or whether it was necessary to sue one or more partners. UPA § 307(a), cmt. (1), 6 U.L.A. 125 (1997). Washington followed the common law rule that a partnership could not sue or be sued apart from its members. 1B KELLY KUNSCH, WASHINGTON PRACTICE: METHODS OF PRACTICE § 67.23, at 267 (4th ed. 1997). In some jurisdictions, the rules of joinder required plaintiffs to name all partners in a single action or face dismissal. UPA Revision Subcomm., *supra*, 43 BUS. LAW. at 139. RCW 25.05.130(1) clarifies that a partnership has capacity to sue and be sued. However, the rule is permissive, not mandatory. II BROMBERG & RIBSTEIN, *supra*, § 5.12(c), at 5:117. Thus, a plaintiff may elect to proceed against one or more individual partners directly.

P.2d 299 (1995). RCW 25.05.130(4) provides that a judgment creditor cannot *execute* a judgment against individual partners without first exhausting the partnership's assets unless an exception applies. But the statute does not require a plaintiff to join a partnership in an action against an individual partner.[21] To hold otherwise would be to suppose that what the legislature gave with one hand (joint and several liability), it took away with the other. *See, e.g., Gerrard v. Craig*, 122 Wn.2d 288, 292, 857 P.2d 1033 (1993) (joint liability permits the joint obligor to insist on joinder of the coobligor while joint and several liability permits a creditor to elect whether to sue parties together or jointly); *James v. Ellis*, 44 Wn.2d 599, 605, 269 P.2d 573 (1954) (injured persons do not need to join all parties that are jointly and severally liable); *Cordova v. Holwegner*, 93 Wn. App. 955, 962, 971 P.2d 531 (1999) (same); 7 WRIGHT, MILLER & KANE, *supra*, § 1623, at 365-66 (unnecessary, and thus not indispensable, to join all the members of a partnership who

---

[21] The legislative history of RUPA supports our interpretation of RCW 25.05.130(4). RUPA underwent four major revisions between 1988 and 1994. 6 U.L.A., prefatory note at 5. The drafters revised RUPA in response to critical commentary from professional organizations. Two revisions are noteworthy here. The initial draft of RUPA § 307(d) (RCW 25.05.130(4)) provided that "[a] claimant may proceed directly against the assets of a partner" without exhausting partnership assets only if the partnership is bankrupt, the partner is independently liable, or the claimant obtains either the partner's or the court's consent to direct suit. J. Dennis Hynes, *The Revised Uniform Partnership Act: Some Comments on the Latest Draft of RUPA*, 19 FLA. ST. U. L. REV. 727 (1992) (quoting UPA (Draft for Partial Approval 1991)). The draft provision was criticized for being unduly burdensome on claimants, particularly tort victims who had no opportunity to contract around an exhaustion requirement. *See, e.g.*, Hynes, *supra*, 19 FLA. ST. U. L. REV. 727; Larry E. Ribstein, *The Revised Uniform Partnership Act: Not Ready for Prime Time*, 49 BUS. LAW. 45 (1993). In revising § 307(d), the drafters substituted "judgment creditor" for "claimant," suggesting that the provision relates to postjudgment execution procedure, not a partner's capacity to be sued. Further, the initial draft of RUPA § 307(c) provided that a judgment creditor may not execute judgment against a partner's personal assets based on " 'a claim that *could have been successfully asserted* against the partnership' " without first exhausting partnership assets. Hynes, *supra*, 19 FLA. ST. U. L. REV. at 731 n.27 (emphasis added) (quoting UPA § 307(c) (Draft for Partial Approval 1991)). The drafters substituted the language "a claim against the partnership" for "a claim that could have been successfully asserted against the partnership." The changes clarify that the exhaustion requirement does not diminish the scope of a partner's liability or immunize a partner from suit when a plaintiff cannot or does not join the partnership. Rather, RCW 25.05.130(4) restricts a plaintiff's postjudgment execution remedies.

are jointly and severally liable because of conduct of one partner, and joinder not required of principals and agents or parent and subsidiary corporations which may be jointly and severally liable).

¶30 Accordingly, Northgate Mall Partnership is not a necessary and indispensable party because nothing in chapter 25.05 RCW *requires* plaintiffs to sue the partnership before proceeding against a partner. Rather, RCW 25.05.130(4) requires a judgment creditor to exhaust partnership assets before executing judgment against the assets of an individual partner whose liability is vicarious rather than direct, absent an exception.

¶31 Here, the Gildons may invoke two exceptions to the exhaustion requirement. RCW 25.05.130(4)(e) provides that a judgment creditor of a partner may levy execution against the assets of a partner to satisfy a judgment based on a claim against the partnership when "[l]iability is imposed on the partner by law or contract independent of the existence of the partnership." In this case, Gildon has brought a premises liability claim against Simon Property based on its actions as "possessor" of the Northgate Mall. Thus, as the Court of Appeals correctly pointed out, Simon Property, itself, is the actor and the possessor, involved in the allegedly tortious conduct. Permitting direct recovery from Simon Property, the possessor of property, is consistent with the long-standing principle that a person is always liable for one's actions in tort. *See, e.g.,* II BROMBERG & RIBSTEIN, *supra,* § 5.08 (partners are liable for their own acts).

¶32 Additionally, the court has equitable discretion to permit the Gildons to directly execute judgment against Simon Property under RCW 25.05.130(4)(d). Under that provision, a judgment creditor may levy execution against the assets of a partner to satisfy a judgment based on a claim against the partnership when a court grants permission, finding the grant "an appropriate exercise of the court's equitable powers." Here, of course, we are not deciding actual liability—this case involves a motion to

dismiss the proceedings based on a finding that Northgate Mall Partnership is an indispensable party under CR 19. The doctrine of indispensability is not jurisdictional but rather is founded on basic equitable considerations. *Cathcart-Maltby-Clearview Cmty. Council v. Snohomish County*, 96 Wn.2d 201, 206, 634 P.2d 853 (1981) (a nonjoined party is not an "indispensable party" when nonjoined and joined parties' interests are substantially the same and the joined party will invariably protect the interests of the nonjoined party).

¶33 In this case, it is undisputed that Simon Property is the largest publicly traded owner and operator of retail property in the country. In claiming at the trial court, the Court of Appeals, and in this court that it is a "mere" general partner in Northgate Mall Partnership, Simon Property failed to disclose the relevant facts regarding cross-ownership. Moreover, Simon Property misled the court regarding the nature of premises liability. Contrary to its suggestions, the law does not impose liability only upon owning "title" to property. Thus, even assuming Simon Property's liability is only vicarious rather than direct, the Gildons may recover from Simon Property directly pursuant to RCW 25.05.130(4)(e), given the equitable powers available under the statute and under CR 19 to do so.

¶34 We agree with the Court of Appeals that the trial court abused its discretion in dismissing Gildon's lawsuit because, as a matter of a law, Northgate Mall Partnership is not a necessary or indispensable party under CR 19. RCW 25.05.130(4)(d) and (e) provide authority for the Gildons to recover directly from Simon Property. Thus, Simon Property can provide complete relief to Gildon as both a direct tortfeasor and as a partner jointly and severally liable under RCW 25.05.125, rendering Northgate Mall Partnership unnecessary. *See, e.g., James*, 44 Wn.2d at 605 (injured persons do not need to join all parties that are jointly and severally liable). Moreover, under CR 19(b), it is even more apparent that the trial court erred in dismissing Gildon's claim against Simon Property: Simon

Property has offered no argument that a judgment in favor of Gildon in Northgate Mall Partnership's absence would be prejudicial to Northgate Mall or Simon Property; Simon Property can provide adequate relief; and Gildon, allegedly seriously injured, would have no adequate remedy if the action were dismissed for nonjoinder. Given the lack of prejudice, ability for adequate monetary relief to be provided by Simon Property should Gildon prevail on the merits, and inability of Gildon to obtain relief in any other proceeding, equity and good conscience clearly dictate that this case should proceed.

## CONCLUSION

¶35  Although Gildon did not name Northgate Mall Partnership, the record owner of the premises, as a defendant in a suit involving a slip and fall accident at Northgate Mall, we hold that the action should proceed. Contrary to Simon Property's contention, a title owner or a "possessor" may be liable in a premises liability action, and Gildon has alleged that Simon Property acted as possessor. Additionally, Gildon also alleged a number of other negligence claims against Simon Property that did not depend on ownership of property. Finally, the fact that Simon Property's conduct may have been in its capacity as a general partner of Northgate Mall Partnership does not magically shield it from judgment under RCW 25.05.130(4). RCW 25.05.130(4) does not address the question of liability and, as under prior law, RUPA continues to impose joint and several liability on partners for tortious acts committed within the scope of the partnership business. RCW 25.05.125. Because Simon Property can provide complete relief should Gildon prevail in her claim, the Partnership is not a necessary party under CR 19(a). Accordingly, the Partnership is not an indispensable party under CR 19(b) and dismissal under CR 12(b)(7) was in error.

¶36 We affirm the Court of Appeals and remand this matter to the trial court for further proceedings.

ALEXANDER, C.J., and C. JOHNSON, SANDERS, BRIDGE, CHAMBERS, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.

Reconsideration denied January 9, 2007.