IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| LAVENNA CAI AND LEON CAI, | ) | |
| | ) | No. 37952-3-III |
| Petitioners, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BENVILLE GUSTAFFE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

STAAB, J. — Benville Gustaffe, N.G.'s biological father, appeals a trial court decision that adjudicated Leon and Lavenna Cai to be N.G.'s de facto parents. Mr. and Ms. Cai filed for non-parental custody of N.G. following the early death of N.G.'s biological mother. The Cais alleged that Mr. Gustaffe is an unfit father and abusive. Mr. Gustaffe appeared in the non-parental custody proceedings to dispute their claims and establish sole custody. At a final hearing on the matter, the trial court determined sua sponte that the Cais were N.G.'s de facto parents. The court awarded primary custody to Mr. Gustaffe with substantial visitation to the Cais.

There are several statutory prerequisites to an adjudicative finding of de facto parentage, including: claiming to be the de facto parent(s), filing a verified petition, an opportunity for adverse parties to dispute the petition, and an expedited show cause hearing when necessary to determine standing. Because these prerequisites were not met in this case, the trial court abused its discretion in finding that the Cais were de facto parents. We reverse and remand.

BACKGROUND

N.G. was born on April 3, 2010, to Davon Nickerson and Benville "Raggs" Gustaffe. When N.G. was born, Mr. Gustaffe and Ms. Nickerson were living together in an apartment in Spokane, Washington. Ms. Nickerson and Mr. Gustaffe lived together for approximately two years prior to N.G.'s birth, and continued living together until N.G. was approximately two-and-a-half years old. After Ms. Nickerson and Mr. Gustaffe separated, Ms. Nickerson moved to Colfax. When Mr. Gustaffe moved to Renton, his visits with N.G. became less frequent and less regular.

In Colfax, Ms. Nickerson moved into a duplex she shared with her mother, Yvonne McCulloh. Ms. Nickerson's sister, LaVenna Cai, and her brother-in-law Leon Cai, lived nearby. Shortly after moving to Colfax, Ms. Nickerson was diagnosed with cancer. After the diagnosis, Ms. Cai provided her sister with periodic domestic support, including financial assistance, preparing meals, and providing transportation.

2

In early 2018, Ms. Nickerson and Mr. Gustaffe scheduled a visitation mediation with retired Judge Richard White. On March 1, 2018, Ms. Nickerson and Mr. Gustaffe met with Judge White and successfully mediated an informal parenting plan. As part of the mediation, the parents agreed that Ms. Nickerson and Mr. Gustaffe loved each other and N.G.; it was important for Mr. Gustaffe to have a "close, loving relationship with [N.G.]" and that "[N.G.] should have regular consistent parenting time with her father." Ms. Nickerson agreed that Mr. Gustaffe should have N.G. at least one weekend per month. When possible, the weekend should be a three-day weekend to give Mr. Gustaffe the maximum time possible with N.G. without interfering with her school schedule. Majority holidays would be shared.

The parties also agreed that during the summer of 2018, Ms. Nickerson and Mr. Gustaffe would move to a schedule where N.G. would alternate between their homes for two-week periods. After N.G.'s school let out for summer break, N.G. went with Mr. Gustaffe to Seattle and began the two-week-on-two-week-off schedule with her father. However, approximately five days into the first visit, Ms. Nickerson called Mr. Gustaffe and asked him to return N.G. to Colfax. After discussing the issue with Judge White, Mr. Gustaffe agreed to return N.G. to Colfax. N.G. remained with her mother for the remainder of the summer.

Ms. Nickerson lost her battle with cancer and passed away on September 13, 2018. Her last will and testament, signed two days before her death, named the Cais as N.G.'s guardians in the event such was necessary.

After Ms. Nickerson passed away, N.G. began living with the Cais. The Cais retained an attorney, and on September 28, 2018, filed (1) a non-parent custody petition claiming Mr. Gustaffe was an unfit father, and (2) an ex-parte motion for an immediate restraining order preventing Mr. Gustaffe from having any time with N.G. Both filings included allegations that Mr. Gustaffe was an abusive father who would be a danger to N.G.

Meanwhile, still unaware that Ms. Nickerson had passed away, Mr. Gustaffe made several attempts to contact her in late September and early October. After eventually learning from Judge White that Ms. Nickerson had passed away, Mr. Gustaffe immediately called the Colfax Police Department and asked for a civil standby to assist him with picking up N.G. During this call, Mr. Gustaffe was informed that the Cais had obtained a restraining order against him. Mr. Gustaffe retained counsel and appeared in the Cais' non-parental custody case.

The Cais filed an amended non-parent custody petition, and moved for an adequate cause hearing and temporary custody. In these filings, the Cais asserted that Mr. Gustaffe was an unfit father and dangerous to N.G. The Cais also moved for appointment of a guardian ad litem (GAL), alleging that (1) N.G. had established

4

relationships with her extended family in Colfax but did not have an established relationship with Mr. Gustaffe, (2) N.G. appeared to not want to speak to Mr. Gustaffe on the telephone, and (3) Mr. Gustaffe had a history of being physically and emotionally abusive toward Ms. Nickerson and her children. The trial court granted the Cais' motion for adequate cause and entered a temporary residential schedule providing the Cais with custody of N.G. Under the terms of these orders, Mr. Gustaffe was required to complete a domestic violence and mental health evaluation and provide proof of completing both of these assessments.

The court also appointed a GAL to investigate the allegations against Mr. Gustaffe. During her investigation, the GAL filed three reports with the court. At trial, the GAL candidly testified that she began her investigation believing that Mr. Gustaffe was an unfit father. After completing nearly two dozen interviews, talking to N.G.'s counselors, and personally observing Mr. Gustaffe with N.G., the GAL found Mr. Gustaffe to be a fit father. The trial court echoed this sentiment when the judge stated:

> Mr. Gustaffe's been run through STOP, through DV, through mental health, through everything the Court ordered to begin with and he's passed in flying colors. I don't know if there's anything more that we can look at from those perspectives because he's done them, he was ordered to do them and he did do them quickly and without hesitation or reservation or without kicking up a bunch of dust, pulling his heels to do them.

Report of Proceedings (RP) at 1058.

5

The GAL found that N.G. viewed Mr. Gustaffe as a father figure before Ms. Nickerson's death, and that Ms. Nickerson had made no efforts to restrict Mr. Gustaffe's parenting time before her death. The GAL also wrote in her report that it was essential that N.G. continue to see the Cai family regularly and that it would benefit N.G. to be given opportunities to be together with the Cai family in Colfax. At the close of trial, the judge stated, speaking of Mr. Gustaffe "there's no question in my mind that N.G. is your heart, your soul, your love." RP at 1065.

Despite finding Mr. Gustaffe to be a fit parent, and that there was "no valid reasons why [N.G] should not live with [Mr. Gustaffe]," the trial court found "beyond a reasonable doubt that [the Cais] were [N.G.]'s de facto parents." Clerk's Papers at 147, 148. The court's conclusion was the first time the term "de facto" parenting was used in these proceedings. The Cais did not argue that they were N.G.'s de facto parents in their initial petition, their amended petition, or at trial. Instead, the Cais focused exclusively on the classic factors of non-parental custody: whether Mr. Gustaffe was a fit parent, and whether there would be actual detriment to N.G. if she were to live with Mr. Gustaffe. Based on its finding that the Cais were N.G.'s de facto parents, the court entered a residential schedule awarding Mr. Gustaffe primary custody of N.G., but providing substantial visitation with the Cais. The residential schedule requires Mr. Gustaffe to drive to Vantage to facilitate exchanges with the Cais, and gives them the right to object if Mr. Gustaffe attempts to move from his current residence. The order requires regular

6

phone communications between N.G. and the Cais, and gives them the legal right to access N.G.'s counseling records.

ANALYSIS

We review the trial court's decision to proclaim the Cais as N.G.'s de facto parents under an abuse of discretion standard. *See In re the Parentage of J.A.B.*, 146 Wn. App. 417, 422, 191 P.3d 71 (2008) (rulings concerning the placement of a child are reviewed for abuse of discretion). A trial court abuses its discretion if it misapplies the law or relies on unsupported facts. *Gildon v. Simon Prop. Grp., Inc.*, 158 Wn.2d 483, 494, 145 P.3d 1196 (2006).

Effective January 2019, the Washington State Legislature codified de facto parentage, RCW 26.26A.440, adopting language from the Uniform Parentage Act of 2017, 9B U.L.A. 80 (2019). This provision allows for parental rights to be established by adjudication. Similar to the common law pronouncement, the purpose of the statute is to "'ensure[ ] that individuals who form strong parent-child bonds with children with the consent and encouragement of the child's legal parent are not excluded from a determination of parentage simply because they entered the child's life sometime after the child's birth.'" *In re the Parentage of J.D.W.*, 14 Wn. App. 2d 388, 404, 471 P.3d 228 (2020) (*quoting* UNIF. PARENTAGE ACT (2017) § 609 cmt., 9B U.L.A. 80-81 (2019)).

The Washington statute provides for the establishment of de facto parentage by a non-parent when statutory requirements are met. RCW 26.26A.440. Such a proceeding

can only be commenced by an individual who claims to be a de facto parent of the child. RCW 26.26A.440(1)(b).  A petitioner seeking de facto parentage status must initially file a verified petition setting forth specific facts sufficient to support the claim of de facto parentage.  RCW 26.26A.440(3)(a).  Any adverse party, including a legal parent, can respond and dispute the facts set forth in the petition.  RCW 26.26A.440(3)(b).  A hearing to determine any dispute of standing must be conducted on an expedited basis. RCW 26.26A.440(3)(c).

None of these procedures occurred in this case.  The Cais did not petition for de facto parentage, Mr. Gustaffe was not given an opportunity to respond to such a petition, and the trial court did not hold a de facto parentage proceeding to consider whether the Cais could prove standing.  In their response brief, the Cais stated that they argued they were N.G.'s de facto parents both in their pleadings and at the hearing for final orders. Br. of Resp't at 28.  This is not reflected in the record.  Additionally, there is no transcript of the hearing for final orders.  As such, any arguments made to establish de facto parentage at this stage are outside the record on appeal.  Furthermore, throughout the record, the Cais admitted that they were not acting as parents to N.G.  The Cais consistently referred to themselves as N.G.'s aunt and uncle throughout the trial and afterwards.

In order to protect the fundamental rights of parents, the correct procedure to establish de facto parentage must be followed.  The failure to do so is an abuse of

8

No. 37952-3-III
*Cai v. Gustaffe*

discretion.  We reverse the trial court's adjudication of the Cais as N.G.'s de facto parents along with the residential schedule based on this finding without prejudice to any subsequent petitions.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Pennell, C.J.

_____
Siddoway, J.