IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

KATHLEEN BRIM, an individual,

               Respondent,

     v.

DMT GARDENS, LLC, a Washington
Company, and LEIGHTON THETFORD,
JR., individually and in his marital
community interest,

               Appellants.

No. 87301-6-I

DIVISION ONE

UNPUBLISHED OPINION

PER CURIAM — Leighton Thetford, Jr. appeals the trial court's order granting Kathleen Brim's renewed motion to vacate a previous order approving a CR 2A settlement agreement. The record supports Brim's claim of newly discovered evidence that she could not have discovered prior to mediation. The trial court did not abuse its discretion by vacating the order approving the CR 2A agreement pursuant to CR 60(b)(3). We affirm.

BACKGROUND

This case involves a renewed motion to vacate an order approving a CR 2A settlement agreement after we reversed a prior order granting motion to vacate. The following facts are taken from the prior opinion, Brim v. DMT Gardens, LLC, No. 85856-4-I (Wash. Ct. App. April 29, 2024) (unpublished) https://www.courts.wa.gov/opinions/pdf/858564.pdf.

In 2017, Brim moved to Washington to be close to her daughter and former son-in-law, Leighton Thetford. Brim, No. 85856-4-I, slip op. at 1. Brim and Thetford identified a suitable residential property, and Thetford formed a limited liability company, DMT Gardens, LLC, in order to purchase the property for use as Brim's residence. Id. In late 2020, Thetford and Brim's daughter dissolved their marriage and the parties began to dispute ownership of the property. Id. On September 24, 2021, Brim initiated this action against Thetford and DMT Gardens by filing a complaint to quiet title to the property. Id. On December 8, 2022, the trial court issued an order directing DMT Gardens to sell the property and deposit the funds in the court registry. Id.

Before sale of the property, the parties engaged in mediation that resulted in a CR 2A settlement agreement executed February 22, 2023. Id. According to the terms of the agreement, DMT Gardens was to transfer ownership of the property to Brim through a quit claim deed after which Brim was to sell the property at a price of her choosing, pay Thetford $235,000 at closing, and retain the remaining proceeds for herself. Id. The trial court entered an order approving the CR 2A agreement on April 7, 2023. Id.

On June 16, 2023, Brim filed a motion to vacate the trial court's order approving the CR 2A agreement. Citing CR 60(b)(1), (3), (4), and (11), Brim argued that Thetford had induced her to settle through fraud, misrepresentation, or other misconduct, and the settlement purpose was frustrated. Id. Brim claimed that she entered the CR 2A agreement, her real estate broker discovered that the septic tank for the property had not been evaluated or approved by the county, the well supplying water to the property had been shut off by the neighbor, and the house and barn on the property had been

constructed without permits. Id. at 2-3. Because of these issues, Brim alleged she was unable to sell the property for more than $200,000. Id. at 3. Thetford, acting pro se, responded with evidence that Brim had been aware of issues stemming from county code violations. Id.

The trial court held a hearing and subsequently vacated the CR 2A agreement pursuant to CR 60(b)(11) "to accomplish justice." Id. at 4. Thetford filed a motion for reconsideration which was denied. Id. As a result of the court's vacation of the CR 2A, the parties were "put back in the same position as if the Settlement Agreement had not been entered into," and the property was to be sold pursuant to the order to sell entered in December 2022.[1] In January 2024, Thetford sold the property for $300,000 and deposited the proceeds in the court registry.[2]

In April 2024, this court issued its decision on Thetford's appeal, concluding that the trial court had abused its discretion by relying on CR 60(b)(11) to vacate the order approving the CR 2A agreement. Brim, slip op. at 8. We noted that CR 60(b)(11) is limited to extraordinary circumstances not covered in any other section of the rule, and must relate to irregularities extraneous to the actions of the court or questions pertaining to the regularity of the court's proceedings. Id. at 5-6. Accepting the trial court's findings of fact as true, "relief would more naturally be granted under CR 60(b)(1) based on mistake, inadvertence, surprise, or excusable neglect; under CR 60(b)(2) based on discovery of newly discovered evidence; or under CR 60(b)(4) based on alleged fraud, misrepresentation, or other misconduct." Id. at 6. The trial court's ruling, therefore, was

---

[1] CP 21.
[2] CP 96, 302 (FF 23).

-3-

"both legally and factually untenable." Id. at 7. We explicitly declined to express an opinion on whether the motion to vacate was proper under any other provision of CR 60(b). Accordingly, we reversed the trial court, reinstated the order approving the CR 2A agreement, and remanded the case for further proceedings. Id. at 8.

Relying on the same evidence as the original motion to vacate, with the addition of the sale of the property, Brim filed a renewed motion to vacate pursuant to CR 60(b)(1), (3), (4).[3] Thetford responded with largely the same evidence introduced in response to the original motion.[4] The trial court held oral arguments and subsequently issued an order granting the renewed motion to vacate based on CR 60(b)(1), (3), and (4).[5] Thetford filed a "motion to amend/omit and object to findings of fact and conclusion of law," as well as a motion to reconsider.[6] The trial court denied both motions.[7]

Thetford appeals.[8]

## DISCUSSION

Thetford challenges the trial court's decision to grant Brim's motion to vacate the order approving their CR 2A agreement.[9] "On motion and upon such terms as are just,

---

[3] CP 22-28.

[4] CP 96.

[5] CP 297, 303-05.

[6] CP 309, 511.

[7] CP 513.

[8] CP 526. Soon after filing his appeal, Thetford filed a motion to stay the trial court proceedings, which a commissioner of this court denied. In December 2024, Thetford requested accelerated review. The commissioner denied accelerated review but gave the appeal "priority status for an expeditious decision." In January 2025, Thetford filed both a "Motion on merit - Motion to reverse" and a renewed motion to stay the proceedings in trial court. In light of our decision herein, we deny those motions.

[9] Thetford challenges many of the trial court's findings of fact, which will be addressed as required to consider the merits of his claims. Additionally, Thetford argues that the trial court's decision to vacate the CR 2A agreement and his reconsideration "is inconsistent with the evidence presented" by his answer to the motion and contrary to law citing to RCW 4.72.050. App Brief 21. However, he offers no legal argument as to the statute's relevance to his claim. We do not consider claims unsupported by legal

the court may relieve a party or the party's legal representative from a final judgment, order, or proceeding" for many reasons, including newly discovered evidence, fraud, misrepresentation, or misconduct. CR 60(b)(3), (4). A decision on a CR 60(b) motion is within the court's discretion and will not be reversed without a showing of abuse of discretion. Winter v. Dep't of Social and Health Servs., 12 Wn. App. 2d 815, 829, 460 P.3d 667 (2020). A court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. Winter, 12 Wn. App. 2d at 829. This includes when "the trial court relies on unsupported facts, takes a view that no reasonable person would take, applies the wrong legal standard, or bases its ruling on an erroneous view of the law." Gildon v. Simon Prop. Grp., Inc., 158 Wn.2d 483, 494, 145 P.3d 1196 (2006). The trial court's factual findings are reviewed for substantial evidence, which is evidence sufficient to persuade a rational fair-minded person the premise is true. Gildon, 158 Wn.2d at 494.

In this case, the trial court granted the motion to vacate on several grounds including CR 60(b)(3), which allows a party to move to vacate for "[n]ewly discovered evidence which by due diligence could not have been discovered in time to move for a new trial." To successfully vacate a judgment for newly discovered evidence, the moving party must show that the evidence: (1) would probably change the result if the court granted a new trial; (2) was discovered since trial; (3) could not have been discovered before trial by the exercise of due diligence; (4) is material; and (5) is not

---

analysis. RAP 10.3(a)(6); Cowiche Canyon Conservatory v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

merely cumulative or impeaching. Jones v. City of Seattle, 179 Wn.2d 322, 360, 314 P.3d 380 (2013).

The trial court concluded that Brim satisfied these requirements:

> Here, the material information as to the status of the property was not known by the moving party prior to entering the CR 2A and subsequent agreed order. Had this information been made available, the moving party would have acted differently in resolving this matter. The material newly discovered information was not available to the moving party before the entry of either the CR 2A or the stipulated order. The moving party established due diligence in their efforts to obtain information about the property.[10]

The evidence in the record supports these findings. After listing the property for sale, Brim received several offers and accepted the highest offer of $600,000.[11] The buyer subsequently defaulted on the purchase and sale agreement citing an inability to obtain financing due to the lack of a written agreement to share the neighbor's water well, the unknown condition of the septic system, and concerns that the barn may have been built on a wetland buffer.[12] The real estate agent then discovered King County code enforcement notices filed against the former owners of the home as recorded in 2003 and 2018, although there was no evidence that the notices were recorded or ran with the land and against DMT Gardens.[13] After speaking with King County code enforcement, the real estate agent learned that none of the structures on the property were permitted.[14] A notice to this effect had been sent to DMT Gardens, "Attn: Leighton Thetford," at its legal mailing address, but had not been recorded.[15] Further discussion

---

[10] CP 304.
[11] CP 653.
[12] CP 653.
[13] CP 654, 738.
[14] CP 654-55.
[15] CP 655, .

with code enforcement revealed that the design for the septic tank was likely never approved by the county.[16]  The real estate agent also learned that the neighbor in control of the water well would not enter a shared use agreement, essentially leaving the home without a water supply.[17]

As a result of these issues, the property could only be sold as vacant land without water or waste systems.[18]  Indeed, Thetford eventually sold the property for $300,000, half the price of the defaulted purchase and sale agreement.  The real estate agent opined, "[t]here was no way that Ms. Brim could have known about the issues prior to entering into the settlement agreement with Mr. Thetford."[19]

Thetford contends that Brim was aware of the code enforcement issues in advance of mediation.  In support, Thetford provided an email from September 2018 in which Brim states that she asked Thetford to "go over the civil issue regarding compliance issues."[20]  In response to interrogatories provided in February 2022, Thetford acknowledged "environmental codes" attached to the property.[21]  Additionally, in February 2023, Thetford's counsel provided a memorandum for mediation that referred to past issues with code compliance.[22]  According to the memorandum, in November 2017, the prior owners received a letter from the county "regarding the construction-related violations" at the property which included a deadline to respond and

---

[16] CP 655.
[17] CP 656.
[18] CP 656.
[19] CP 657,
[20] CP 136.
[21] CP 60-61, 78.
[22] CP 128-29.

make the property code compliant.[23]  The former owners asked Thetford to purchase the property so that the Thetford's "would be responsible for making the Property code compliant."[24]  According to Thetford, Brim was aware that he had formed DMT Gardens, LLC to insulate them personally from any enforcement actions due to the county code on the property.[25]

The record suggests that Brim had some awareness of possible "county code" or "environmental code" issues pertaining to the property.  However, the record does not support that she was aware of the extensive nature of those violations or the issues related to the well water or septic systems.  On the day of mediation, Brim obtained a title report that showed no issues as to water source, septic system, or code enforcements.[26]  The water source and septic system issues became known only after the buyer defaulted on the purchase and sale agreement, at which point the real estate agent made several different inquiries in order to uncover the true extent of the issues with the property.  The severity of the violations associated with the property that resulted in a significant reduction in its sales value was newly discovered evidence that Brim could not have known prior to mediation and entering the CR 2A agreement.

The trial court's findings that Brim had not known the extent of the issues prior to entering the CR 2A agreement, that the information had not been available to her, that she acted with due diligence to obtain information about the property, and that she would have acted differently had she known the relevant information are supported by

---

[23] CP 129.
[24] CP 129.
[25] CP 150, 130.
[26] CP 41, 650, 664.

substantial evidence in the record. The trial court's decision to vacate the order approving the CR 2A agreement was not an abuse of discretion.[27]

Affirmed.[28]

FOR THE COURT:

_Díaz, J._

_Coburn, J._

_Dwyer, J._

---

[27] Given our decision affirming the trial court's grant of the motion to vacate pursuant to CR 60(b)(3) we need not address the trial court's reliance on CR 60(b)(1) and (4).

[28] Brim requests attorney fees on appeal, asserting that Thetford's appeal is frivolous. Resp Brief 4. However, Brim merely includes the request in a single sentence with several legal citations at the conclusion of the introduction. She does not devote a section of her brief to the request as required by RAP 18.1(b). Howard v. Pinkerton, 26 Wn. App. 2d 670, 680, 528 P.3d 396 (2023). She also fails to provide the necessary legal argument. Stiles v. Kearney, 168 Wn. App. 250, 267, 277 P.3d 9 (2012). Therefore, we decline to award her fees on appeal.