196 P.3d 153 (2008)
Eugene "Chip" MUDARRI, an individual, Lakeside Casino, LLC and C F S, LLC d/b/a Freddie's Club of Fife, Appellant/Cross Respondent,
v.
The STATE of Washington, which is comprised of various State entities including, but not limited to, Christine Gregoire, Governor of the State of Washington, Gary Locke, former Governor of the State of Washington, and as an individual, Rick Day, Director of the Washington State Gambling Commission, Ken Nakamura, Director of the *154 Washington State Lottery, the Washington State Gambling Commission: Commissioners Janice Niemi, Alan Parker, Curtis Ludwig, and George Orr, and the Washington State Lottery Commission: Commissioners Rachel Garson, Carol Keljo, Robert Scargrough, Larry Taylor, and Melinda Travis, Respondents/Cross Appellants.
No. 36130-2-II.
Court of Appeals of Washington, Division 2.
November 18, 2008.
*157 Joan Kristine Mell, III Branches Law PLLC, Fircrest, WA, for Appellant.
Jerry Alan Ackerman, Assistant Attorney General, Olympia, WA, for Respondent.
*158 HUNT, J.
¶ 1 Eugene Mudarri appeals the trial court's summary judgment dismissal of his declaratory judgment action against the State of Washington, in which he sought (1) authorization to operate electronic scratch ticket lottery games at his private casino; or (2) alternatively, invalidation of the 1996 State-Tribe Compact,[1] under which the Puyallup Tribe (Tribe) operates electronic scratch ticket games at its nearby tribal casino. Mudarri's arguments fall into three basic categories: (1) challenges to the validity of the State-Tribe Compact, which allows the Tribe's Casino to operate electronic scratch ticket games; (2) claims that allowing the Tribe to operate these games, but not Mudarri, violates statutory and constitutional provisions; and (3) other claims for relief, including equitable estoppel and attorney fees.
¶ 2 In the first category, Mudarri requests a declaratory judgment that the State-Tribe Compact is invalid; we characterize this declaratory judgment argument as Mudarri's "direct" challenge. He also makes the following Compact-related arguments: (1) The State-Tribe Compact violates the separation of powers and the delegation doctrine;[2] (2) the State-Tribe Compact allows the Tribe to operate illegal gaming on fee land; (3) the State-Tribe Compact granted the Tribe an illegal monopoly for electronic scratch ticket games; and (4) the Tribe enjoys illegal favorable tax rates under the State-Tribe Compact.[3] We characterize these four Compact-related arguments as "indirect" challenges to the validity of the State-Tribe Compact.
¶ 3 In the second category, Mudarri argues that the State should allow him, like the Tribe, to operate electronic scratch ticket games based on the following statutory and constitutional arguments: (1) Electronic scratch ticket games are equivalent to both the State lottery and the previous State-offered paper (non-electronic) scratch ticket Zip game; and (2) preventing Mudarri from operating these games violates his (a) constitutional equal protection rights,[4] (b) substantive due process rights,[5] and (c) rights under the Privileges and Immunities Clause of the Washington Constitution.[6] In the third category, Mudarri argues that he is entitled to damages under the doctrine of equitable estoppel, and he requests attorney fees on appeal under RCW 4.84.350.
¶ 4 The State cross-appeals the grounds on which the trial court dismissed Mudarri's claims indirectly attacking the validity of the State-Tribe Compact. The State argues that the trial court should have dismissed these claims for failure to join the Tribe as an indispensable party under Civil Rule (CR) 19(b), rather than on grounds of failure to state a claim on which relief can be granted under CR 12(b)(6).
¶ 5 We hold that (1) the Tribe, which is not a party to Mudarri's action, is "indispensable"[7] to adjudication of his challenges to the State-Tribe Compact; (2) because the Tribe cannot be sued without waiving its sovereign immunity, the trial court lacked jurisdiction to consider all of Mudarri's claims challenging the validity of the State-Tribe Compact, *159 both directly and indirectly; (3) Mudarri's proposed private electronic scratch ticket game is not equivalent to either the State lottery or the State's previously offered, but now defunct, paper Zip game; (4) by entering into the State-Tribe Compact, the State did not violate Mudarri's equal protection, due process, or privileges and immunities rights; (5) Mudarri fails to establish equitable estoppel; and (6) because he does not prevail on appeal, Mudarri is not entitled to attorney fees. Accordingly, we affirm the trial court's summary judgment dismissal of Mudarri's action.

FACTS

I. Background: Electronic Scratch Ticket Gaming

A. Tribal Gaming History
¶ 6 During the 1990s, the Puyallup Tribe and other Washington Indian tribes sued the State of Washington in federal court to determine the types of gambling that were subject to negotiation in state-tribe compacts under the federal Indian Gaming Regulatory Act, 25 U.S.C. § 2701-2721.[8] As a result of that federal court litigation, in 1998 the Tribe and the State negotiated changes to their State-Tribe Compact to allow Washington Indian tribes to operate electronic scratch game terminals.
¶ 7 The Puyallup Tribe's Emerald Queen Casino in Fife has been in operation since January 2005. It is located within the Puyallup Indian Reservation 1873 survey boundary area, near Mudarri's non-tribal casino. After Mudarri commenced the lawsuit at issue here, the United States Government took the Tribe's fee simple land on which the Tribe had built the Emerald Queen Casino and, on May 18, 2006, placed this land in trust for the Tribe's benefit.
¶ 8 The Tribe's Emerald Queen Casino has multiple electronic scratch ticket game terminals, which comprise part of the Tribe's lottery system. Unlike traditional slot machines, a player at an electronic scratch ticket game terminal does not play against the individual machine. Instead, he or she plays against the Tribe's central lottery computer, on which a fixed number of electronic scratch tickets are stored for each terminal and to which the individual electronic terminals are linked. Each terminal displays the outcome of every electronic scratch ticket played on that terminal.

B. Mudarri's Complaint
¶ 9 In December 2004, Mudarri complained to the State Gambling and Lottery Commissions that his non-tribal casino was losing money because he could not operate electronic scratch ticket games, for which Indian tribes have exclusive rights. Mudarri proposed that the State allow him to operate 250 electronic scratch ticket machines in his private casino; in return, he would commit 20 percent of the machines' profits to the State. Mudarri also asked whether the State commissions would take action against him if he installed and began operating electronic scratch ticket games in his casino.
¶ 10 The State Lottery Commission Director (1) explained that the state legislature had not authorized the State Lottery to operate or to receive profits from electronic gaming machines, and (2) denied Mudarri's request for permission to install the electronic scratch ticket machines. Noting that "absent a change in state law," only Indian tribes could operate electronic ticket machines, the State Gambling Commission Director similarly denied Mudarri's request for permission to install electronic gaming machines. After describing the Indian Gaming Regulatory Act,[9] the Director explained, "If your facility installs and operates electronic *160 machines, we will have no choice but to seize the machines and commence an action to forfeit them to the State." CP at 149.

II. Procedural History
¶ 11 On January 27, 2005, Mudarri filed a declaratory judgment action in Thurston County Superior Court. He asked the court (1) to declare his proposed electronic scratch ticket games legal; and (2) alternatively, to declare invalid the gaming Compact between the State and the Tribe because it violated his constitutional rights. Both parties filed motions for summary judgment. The State moved to dismiss Mudarri's action for failure to join the Tribe as a necessary and indispensable party under CR 19 and RCW 7.24.110.
¶ 12 Noting that the Tribe had not waived its sovereign immunity,[10] the trial court summarily dismissed Mudarri's request to declare the State-Tribe Compact invalid because Mudarri had not joined the indispensable Tribe as a party.[11] But the trial court denied the State's motion to dismiss Mudarri's remaining claims on this failure-to-join ground; instead, in a later order, the trial court denied Mudarri's motion for summary judgment, granted summary judgment to the State, and dismissed Mudarri's remaining claims.[12] The trial court ruled that (1) it lacked jurisdiction to review the State-Tribe Compact and tribal gaming practices, (2) the State lacked legal power to authorize Mudarri's request to install electronic gaming machines, and (3) the State did not violate Mudarri's constitutional rights by denying him permission to install them.
¶ 13 Mudarri appealed to the Washington Supreme Court, seeking direct review of the trial court's summary judgment dismissal of his action. The State filed a cross appeal, challenging the grounds on which the trial court dismissed some of Mudarri's claims. The Supreme Court declined direct review and transferred the appeals to us.

ANALYSIS

I. Standard of Review
¶ 14 When reviewing a summary judgment, we engage in the same inquiry as the trial court. Hisle v. Todd Pacific Shipyards Corp., 151 Wash.2d 853, 860, 93 P.3d 108 (2004) (citing Kruse v. Hemp, 121 Wash.2d 715, 722, 853 P.2d 1373 (1993)). The standard of review is de novo. Id. Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c).
¶ 15 We review for abuse of discretion a trial court's determination that a party is or is not indispensable under CR 19(b), with the caveat that we review de novo any legal conclusions underlying such decision. Gildon v. Simon Prop. Group, 158 Wash.2d 483, 493, 145 P.3d 1196 (2006). We may also affirm the trial court on any alternative ground that the record adequately supports. See State v. Costich, 152 Wash.2d 463, 477, 98 P.3d 795 (2004); Nast v. Michels, 107 Wash.2d 300, 308, 730 P.2d 54 (1986).

II. Dismissal of Claims Challenging Validity of State-Tribe Compact
¶ 16 Mudarri appeals the trial court's dismissal of his action against the State on summary judgment. He challenges the validity of the State-Tribe Compact both directly and indirectly. With respect to the trial court's dismissal of his request for declaratory relief  a summary judgment declaring the State-Tribe Compact invalid Mudarri argues that (1) the trial court should not have dismissed this claim for failure to *161 join the Tribe as an indispensable party under CR 19; and (2) instead, the courts should create an exception to CR 19(b) because designating the Tribe as an indispensable party "results in unlimited executive power free from judicial challenge." Br. of Appellant at 21. Mudarri makes separate legal arguments in support of his other claims indirectly challenging the trial court's dismissal on summary judgment.
¶ 17 In its cross appeal, the State does not challenge the trial court's summary judgment dismissal of Mudarri's claims or its rationale for denying Mudarri's direct request for a declaratory judgment that the State-Tribe Compact is invalid. Rather, it challenges only the trial court's rationale for its summary judgment dismissal of Mudarri's other, indirect challenges to the validity of the State-Tribe Compact, namely the trial court's refusal to dismiss these indirect claims on the same failure-to-join an indispensable party grounds. Relying on CR 19(b), the State argues that (1) Mudarri had a mandatory duty to join all necessary and indispensable parties to his declaratory judgment action below; (2) Mudarri failed to fulfill this duty because he did not and could not join the Tribe, an indispensable party; and (3) after ruling that it lacked jurisdiction to review Mudarri's direct attack on the validity of the State-Tribe Compact, the trial court erred in ruling that the Tribe's interests were insufficient to warrant dismissal of Mudarri's remaining claims on the same basis  failure to join the Tribe as an indispensable party.
¶ 18 We affirm the trial court's (1) ruling that the Tribe is an indispensable party to Mudarri's direct challenge to the validity of the State-Tribe Compact, and (2) dismissal of that claim for failure to join the Tribe under CR 19(b), CR 12(b)(7), and RCW 7.24.110. We also affirm the trial court's dismissal of Mudarri's indirect challenges to the State-Tribe Compact, but on alternative, indispensable-party grounds under CR 19(b) and CR 12(b)(7).

A. CR 19(b) and CR 12(b)(7)
¶ 19 CR 12(b)(7) allows a trial court to dismiss an action for "failure to join a party under rule 19." Such dismissal for failure to join a party is a drastic remedy that courts should employ sparingly, such as when a defect cannot be cured. Gildon, 158 Wash.2d at 494, 145 P.3d 1196 (citing 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1609, at 130 (3d ed.2001)). Like the trial court, we cannot address Mudarri's claims related to the validity of the State-Tribe Compact because we lack jurisdiction to adjudicate in the absence of the Tribe, an indispensable party under CR 19(b). And Mudarri cannot join the Tribe because it has not waived its sovereign immunity.

1. Tribal Sovereign Immunity
¶ 20 The well-settled sovereign immunity of Indian tribes is central to the trial court's dismissal of Mudarri's direct State-Tribe Compact claims and to our affirmance of summary judgment dismissal of Mudarri's claims challenging the State-Tribe Compact both directly and indirectly. For more than a century, both Congress and the United States Supreme Court have consistently recognized and upheld long-established tribal sovereign immunity. Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla., 498 U.S. 505, 510, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991) (citing Indian Financing Act of 1974, 88 Stat. 77, 25 U.S.C. §§ 1451-53; Indian Self-Determination and Education Assistance Act, 88 Stat. 2203, 25 U.S.C. § 450-58; California v. Cabazon Band of Mission Indians, 480 U.S. 202, 216, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987); Turner v. United States, 248 U.S. 354, 358, 39 S.Ct. 109, 63 L.Ed. 291 (1919)).
¶ 21 Relying upon this well-settled legal precedent, we have consistently recognized tribal sovereign immunity. See, e.g., Foxworthy v. Puyallup Tribe of Indians Ass'n, 141 Wash.App. 221, 225, 169 P.3d 53 (2007) ("As domestic dependent nations, American Indian tribes exercise inherent sovereign authority over their members and territories. This inherent sovereignty includes immunity from suit absent a clear waiver by the tribe or congressional abrogation." (citations omitted)); Matheson v. Gregoire, 139 Wash.App. 624, 632, 161 P.3d 486 (2007) ("Under federal *162 law, tribal sovereign immunity comprehensively protects recognized American Indian tribes from suit absent explicit and unequivocal waiver or abrogation." (citations omitted)), review denied, 163 Wash.2d 1020, 180 P.3d 1292 (2008).
¶ 22 As "domestic dependent nations,"[13] Indian tribes have inherent sovereign immunity, which bars lawsuits against them absent a tribe's clear waiver or congressional abrogation. Potawatomi, 498 U.S. at 509, 111 S.Ct. 905 (quoting Cherokee Nation v. Georgia, 5 Pet. 1, 30 U.S. 1, 17, 8 L.Ed. 25 (1831)). Here, it is uncontroverted that (1) the Puyallup Tribe has sovereign immunity, which bars its being sued absent the Tribe's waiver; and (2) the Tribe has not waived its sovereign immunity for purposes of Mudarri's lawsuit.

2. Indispensable Party
¶ 23 Under CR 19(b), a trial court undertakes a two-part analysis to determine whether a party is indispensable to a particular cause of action. Gildon, 158 Wash.2d at 494, 145 P.3d 1196. First, the trial court must decide whether a party is necessary for the adjudication. Id. (citing Crosby v. County of Spokane, 137 Wash.2d 296, 306, 971 P.2d 32 (1999)); CR 19(a). Second, when an absent party is necessary but cannot be joined, "the court must determine whether in `equity and good conscience' the action should proceed among the parties before it or should be dismissed, the absent party being thus regarded as indispensable." Gildon, 158 Wash.2d at 495, 145 P.3d 1196 (quoting Crosby, 137 Wash.2d at 306-07, 971 P.2d 32; CR 19(b)).
¶ 24 For the first part of the analysis, whether a party is "necessary" for the adjudication, the trial court properly determined that the Tribe is a necessary, but absent, party to adjudicate Mudarri's claim that the State-Tribe Compact is invalid. The Tribe and the State both entered into the State-Tribe Compact; both are necessary parties. Although the Mudarri sued the State and, thus, brought it before the trial court, he did not and could not sue or otherwise join the *163 Tribe as a party without its waiver of sovereign immunity.
¶ 25 For the second part of the analysis, whether a party is "indispensable," the court considers the following factors: (1) the extent which a judgment rendered in the party's absence might be prejudicial to that party or to those already parties; (2) the extent to which the prejudice can be lessened or avoided by protective provisions in the judgment, by shaping of relief, or other measures; (3) whether a judgment rendered in the party's absence will be adequate; and (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. CR 19(b).
¶ 26 Here, the third CR 19(b) factor is dispositive: The Tribe's sovereignty renders it uniquely immune to a private lawsuit without its consent, and the Tribe has not consented to Mudarri's lawsuit. In the Tribe's absence, the trial court cannot render a judgment on Mudarri's challenges to the State-Tribe Compact; thus, the trial court cannot adequately address these claims. CR 19(b)(3). Because no judgment can be rendered in the Tribe's absence, we do not address the other three factors.[14]

B. Direct Challenge to State-Tribe Compact  Properly Dismissed for Failure to Join Tribe
¶ 27 We hold that the Tribe is an indispensable CR 19(b) party to Mudarri's claims directly attacking the validity of the State-Tribe Compact. Thus, we affirm the trial court's summary judgment dismissal of his request to declare the State-Tribe Compact invalid.[15] CR 12(b)(7).

C. Indirect Challenges to State-Tribe Compact  Also Dismissible for Failure to Join Tribe
¶ 28 In addition to his direct challenges, Mudarri also indirectly attacks the validity of the State-Tribe Compact in several other claims.[16] He argues that the State-Tribe Compact illegally (1) violates the separation of powers and the delegation doctrine; (2) allows tribal gaming on fee land; and (3) grants the Tribe both a monopoly and unfair tax rates. These indirect challenges also fail for the same reason that we affirm summary *164 judgment dismissal of his direct challenge  failure to join the Tribe as an indispensable party under CR 12(b)(7) and 19(b).
¶ 29 Just as the Tribe did not waive its sovereign immunity from suit on Mudarri's direct challenge to the State-Tribe Compact, it neither waived its immunity nor consented to be sued on these claims related to and, thus, indirectly attacking the State-Tribe Compact. Because the Tribe could not be joined as a party, the trial court could have recited failure to join an indispensable party under CR 12(b)(7) and 19(b) as a ground for dismissing Mudarri's other claims indirectly related to the State-Tribe Compact. Although the trial court apparently dismissed these claims for failure to state a ground on which relief can be granted, we affirm their dismissal on alternative CR 19(b) grounds. Gildon, 158 Wash.2d at 494-95, 145 P.3d 1196.
¶ 30 We discuss in turn each of Mudarri's indirect challenges to the State-Tribe Compact.

1. Separation of powers and delegation doctrine
¶ 31 Mudarri first argues that the State-Tribe Compact's permitting electronic scratch ticket machines at the Tribe's Emerald Queen Casino violates the constitutional separation of powers and delegation doctrine because the Governor, not the Legislature, entered into the State-Tribe Compact on the State's behalf. This argument attacks the validity of the State-Tribe Compact. As we have already held, the Tribe is a necessary party to any challenge to the validity of its Compact with the State. Absent waiver, sovereign immunity prevents the Tribe's joinder as a party to Mudarri's action, so the trial court could not adjudicate Mudarri's separation of powers claim. Therefore, the trial court should have included this claim in its partial dismissal based on failure to join an indispensable party under CR 19(b). On this alternate ground, we affirm the trial court's ultimate dismissal of Mudarri's separation of powers claim.
¶ 32 Because the Tribe has not been and cannot be joined as a party to this lawsuit without its consent, we cannot reach the merits of Mudarri's gubernatorial-delegation argument, which also necessarily involves a challenge to the validity of the State-Tribe Compact. CR 19(b). Therefore, we do not further consider the merits of Mudarri's separation of powers argument and, on this alternative CR 19(b) ground, we affirm dismissal of this claim. CR 12(b)(7).

2. Tribal gaming, originally on fee land
¶ 33 Second, Mudarri argues that in entering into the State-Tribe Compact, the Governor improperly negotiated away state jurisdiction over the Tribe's Emerald Queen Casino's non-trust property because (1) the Tribe's casino was originally on fee land, and (2) the Tribe's sovereign jurisdiction is limited to trust land. The record shows, however, that the Tribe's Emerald Queen Casino currently sits, not on fee land, as Mudarri contends, but on land held in trust for the Tribe by the federal government.[17] Thus, Mudarri's argument fails.
¶ 34 Moreover, regardless of the legal status of the land on which the Tribe's casino is located, the Tribe is an indispensable party to Mudarri's attack on the Tribe's trust land status[18] and, as we have already explained, the courts cannot adjudicate this claim without the Tribe joined as a party. Again, on the alternative CR 19(b) ground, we affirm the trial court's dismissal of this claim. CR 12(b)(7).

*165 3. Gambling monopoly and unfair tax rates
¶ 35 Mudarri next argues that the State-Tribe Compact's permitting electronic scratch ticket machines at the Tribe's Emerald Queen Casino violates (1) article II, section 24, of the Washington Constitution, which prohibits lotteries except where approved by 60 percent of the Legislature or 60 percent of the voters in a referendum or initiative;[19] (2) article XII, section 22, of the Washington Constitution, which prohibits such an allegedly illegal monopoly; (3) Washington Constitution article VII, section 5, insofar as the "Governor improperly gifted jurisdiction and exclusive gaming rights to the tribe without consideration"[20] when it entered into the State-tribe Compact; and (4) article VII, section 1, of the Washington Constitution, insofar as the State granted the Tribe favorable tax rates in entering into the State-Tribe Compact. These claims all inherently challenge the validity of the State-Tribe Compact, which we have no jurisdiction to consider in the absence of the Tribe, an indispensable party under CR 19(b). Thus, we affirm dismissal of these claims, again on alternative, indispensable-party grounds.
¶ 36 In summary, we affirm the trial court's summary judgment dismissal of Mudarri's claims directly and indirectly challenging the validity of the State-Tribe Compact.

III. Dismissal of Mudarri's Non-Compact Claims
¶ 37 Mudarri's remaining statutory and constitutional claims do not challenge the validity of the State-Tribe Compact, either directly or indirectly. These claims include: (1) that electronic scratch ticket games are equivalent to the State lottery and the defunct State Zip game; and (2) that preventing Mudarri from operating these games violates his equal protection rights, substantive due process rights, and rights under the Privileges and Immunities clause of the Washington Constitution. We agree with the trial court that the Tribe is not an indispensable party whose joinder is necessary to adjudicate these claims under CR 12(b)(7) and 19(b).
¶ 38 Nevertheless, we affirm the trial court's grant of summary judgment dismissal of these claims, on which the State is entitled to judgment as a matter of law. We discuss each dismissed claim in turn.

A. Non-Tribal Private Electronic Scratch Ticket Games
¶ 39 Mudarri argues that the trial court erred in granting summary judgment to the State and ruling that the State Gambling and Lottery Commissions had no authority under previous law to permit installation of electronic scratch tickets in his casino. Asserting that State lottery games are not illegal, Mudarri (1) contends that his private electronic scratch tickets are equivalent to legal State lottery scratch tickets sold by State lottery retailers; and (2) equates his proposed scratch tickets with the State's now defunct, but previously legal, Zip game.[21] These arguments also fail.

1. State lottery
¶ 40 Mudarri argues that his proposed electronic scratch ticket game is comparable to the legalized State lottery and, therefore, he should be allowed to offer it in his private casino. Mudarri proposed installing his own electronic scratch ticket machines and giving the State a percentage of his profits. Br. of Appellant at 3 (citing CP 454, 1843-46). But state law does not authorize a private lottery such as the one Mudarri proposes.
¶ 41 Article II, section 24, of the Washington Constitution limits the State Gambling and Lottery Commissions' authority with respect to lotteries as follows:

Lotteries shall be prohibited except as authorized upon the affirmative vote of sixty percent of the members of each house of *166 the legislature or, notwithstanding any other provision of this Constitution, by referendum or initiative approved by a sixty percent affirmative vote of the electors voting thereon.
(Emphasis added.) In 1994, the Legislature passed RCW 67.70.040(1), authorizing the State's operation of a lottery and delegating to the Lottery Commission the power and the duty to conduct and to regulate such state lotteries. But neither RCW 67.70.040(1) nor any other Washington State law authorizes a private lottery of the type that Mudarri proposes.
¶ 42 Nevertheless, Mudarri contends he was not proposing to conduct a private lottery; rather, he asserts that he proposed "to partner" with the State in operating its state lottery. Contrary to Mudarri's assertions, however, the trial court found that he was proposing a private, self-banked lottery. In granting summary judgment and dismissing Mudarri's claim, the trial court ruled that the "Lottery Act does not permit private, self-banked lotteries," such as the one Mudarri proposed. CP at 2728.
¶ 43 We agree with the trial court. Nothing in the gambling or lottery statutes, current or historical,[22] permit the State Gambling and Lottery Commissions to authorize a private lottery in the form of an electronic scratch ticket game. Absent statutory authority, the Commissions cannot authorize Mudarri's proposed private electronic scratch ticket lottery. We hold, therefore, that the trial court properly granted summary judgment to the State on this claim.

2. State Zip game
¶ 44 The State began the Zip game on July 16, 2005. Zip game players inserted paper lottery game tickets[23] into electronic terminals at State-authorized retail locations.[24] The terminals then indicated whether the inserted ticket was a winner. In October 2005, however, only three months after beginning the Zip game, the Washington Lottery Commission permanently terminated the Zip game. Thus, to the extent Mudarri asserts his proposed game should be now legal because it is like the State's terminated Zip game, his argument fails: The State's Zip game is no longer authorized by the Lottery Commission, and it is no longer in existence.
¶ 45 Consequently, the legality of Mudarri's proposed electronic Zip-like[25] game must separately derive from the Lottery Commission's statutory authority, if any, and not from the State's past lottery experiments with the short-lived, now-defunct Zip game. But Mudarri cites no such current statutory authority. Moreover, according to the Deputy Director of the Washington Lottery, "[A]bsent amendment of its statutory authority, the Washington State Lottery does not intend to offer the "[Z]ip" game, or any other game that operates in a fundamentally similar manner, in the future." CP at 2663. Thus, the Zip game that Mudarri proposes to emulate is not only defunct, but also no longer legal for even the State Lottery to operate.
¶ 46 We affirm the trial court's dismissal of Mudarri's claims  that his proposed operation is the equivalent to the State lottery and defunct Zip game  for failure to state a claim on which relief can be granted.

B. Constitutional Claims
¶ 47 Mudarri further argues that in granting summary judgment, the trial court erred in ruling that the State did not violate any "rights granted to [Mudarri] by the United States and Washington Constitutions." CP at 2730. Again, this argument fails. We hold that Mudarri has not stated any constitutional *167 claims on which relief may be granted.

1. Equal Protection
¶ 48 Mudarri argues that the State Gambling and Lottery Commissions discriminated against him in violation of his equal protection constitutional rights.[26] Asserting that the Commissions' actions violated his fundamental right of "freedom from discrimination," he urges us to apply a strict scrutiny standard of review. Br. of Appellant at 42. Mudarri does not challenge the state legislation restricting lottery activities. Rather, he challenges the Commissions' actions enforcing the legislative prohibition of private electronic scratch ticket games, RCW 67.70.040(1)(a). This legislative prohibition prevents Mudarri from operating such games, while the State-Tribe Compact allows the Tribe to operate them. Br. of Resp't at 41. But because Mudarri is not similarly situated to the Tribe, he has not shown any unlawful discrimination or violation of his equal protection rights.
¶ 49 Mudarri bears the burden of proving that the challenged statute and its application are unconstitutional beyond a reasonable doubt. Ford Motor Co. v. Barrett, 115 Wash.2d 556, 563, 800 P.2d 367 (1990). Amendment XIV, section 1, of the United States Constitution provides, in pertinent part: "No State shall make or enforce any law which shall ... deny to any person within its jurisdiction the equal protection of the laws." Thus, our federal constitution guarantees equal rights among individuals and classes of individuals. See U.S. Const. amend. XIV, § 1; State v. Shawn P., 122 Wash.2d 553, 559-60, 859 P.2d 1220 (1993) (holding equal protection under the federal constitution applies to similarly situated persons). To prevail, Mudarri must prove that the statute fails to afford like treatment to "persons similarly situated with respect to the legitimate purpose of the law...." State v. Coria, 120 Wash.2d 156, 169, 839 P.2d 890 (1992) (emphasis added) (citing State v. Schaaf, 109 Wash.2d 1, 17, 743 P.2d 240 (1987)); see also Gig Harbor Marina v. City of Gig Harbor, 94 Wash.App. 789, 797, 973 P.2d 1081 (1999), cert. denied, 528 U.S. 1155, 120 S.Ct. 1162, 145 L.Ed.2d 1073 (2000).
¶ 50 Mudarri's equal protection argument fails because he is not comparing himself to similarly situated persons. On the contrary, the Tribe, to which he attempts a comparison, is not such a "person." The plain language of amendment XIV, section 1, of the United States Constitution does not confer on private individuals rights equal to governmental entities such as the state, a city, or a sovereign nation like the Tribe, which is a political entity that "engage[es] in government-to-government relationships with the United States." Foxworthy v. Puyallup Tribe of Indians Ass'n, 141 Wash. App. at 226, 169 P.3d 53 (2007) (citing Cherokee Nation v. Georgia, 5 Pet. 1, 30 U.S. 1, 17, 8 L.Ed. 25 (1831)). See also discussion supra Part II.A.1.
¶ 51 We agree with the State that the state gaming and lottery "statutes at issue in this matter do not designate any classes or mandate disparate treatments for anyone."[27] Nor do the statutes give individual tribal *168 members more gaming rights than they do to Mudarri. Individual tribal members and Mudarri have equal rights for purposes of these state gaming laws.[28] For example, state law does not allow any individual to run his or her own lottery; this law applies to both individual tribal members and to non-tribal members.[29]See RCW 67.70.040; Wash. Const. art. II, § 24; see also Louie, 139 Wash. 430, 247 P. 728.
¶ 52 Washington law does, however, allow the State and tribal governments to operate lotteries. RCW 67.70.040. But Mudarri is neither an Indian Tribe nor a government. On the contrary, he is an individual and, therefore, prohibited from running a lottery for profit.[30]See RCW 9.46.010 (authorizing private, or individual lotteries, only where "no valuable consideration has been paid or agreed to be paid" for the lottery). Consequently, the state statutes prohibiting non-tribal electronic scratch ticket games and the Commissions' interpretation of these statutes do not violate Mudarri's equal protection rights.
¶ 53 Mudarri fails to establish any violation of his equal protection rights under the federal constitution. Thus, we affirm the trial court's ruling that the State was entitled to judgment as a matter of law on this claim.

2. Substantive due process
¶ 54 Mudarri next contends that "[t]he government's treatment of [him] is precisely an example of the arbitrary exercise of power the Magna Carta attempted to extirpate from Anglo-Saxon law." Br. of Appellant at 41 (citing Daniels v. Williams, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)). He baldly asserts that the state Commissions' denial of his request to operate electronic scratch ticket games is "fundamentally unfair." Br. of Appellant at 41. But he fails to explain how he was deprived of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1; Wash. Const. art. I, § 3.
¶ 55 It is well established that "naked castings into the constitutional sea are not sufficient to command judicial consideration and discussion." United States v. Phillips, 433 F.2d 1364, 1366 (8th Cir.1970), cert. denied, 401 U.S. 917, 91 S.Ct. 900, 27 L.Ed.2d 819 (1971); see also State v. Johnson, 119 Wash.2d 167, 171, 829 P.2d 1082 (1992). "Parties raising constitutional issues must present considered arguments to this court." Johnson, 119 Wash.2d at 171, 829 P.2d 1082. Thus, a party's passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration. Id. Because Mudarri's substantive due process argument is insufficient to allow review, we do not further consider it, and we affirm the trial court's grant of summary judgment on this claim as well.

3. Privileges and immunities
¶ 56 Mudarri next asserts that the State Gambling and Lottery Commissions violated his rights under the Privileges and Immunities Clause of article I, section 12, of the Washington Constitution. He claims denial of a fundamental right to fair tax treatment because "grocery stores and gas stations are permitted to operate scratch ticket gaming in *169 an electronic format, but [he] is not." Br. of Appellant at 40. He also contends that the Commissions are engaging in "unconstitutional `favoritism and special treatment'" with regard to the Tribe, and that they have violated his fundamental right to engage in business.[31] Br. of Appellant at 39. These arguments also fail. The State has not violated this constitutional provision with respect to Mudarri.
¶ 57 The Washington Constitution, article 1, section 12, provides: "No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens or corporations." Because there is no ambiguity in the text of this Privileges and Immunities Clause, we must give the language its plain meaning, without further construction.[32]
¶ 58 First, as we previously noted, the State Lottery Commission no longer offers, nor is authorized to offer, the Zip game. Moreover, even during the short time the State ran the game, Mudarri never applied to be a Zip game retailer for the State. Second, the grocery stores and retailers that sell State lottery tickets are not operating individual private lotteries of the type Mudarri proposes to operate. Third, nothing in the record shows that Mudarri ever applied to sell State lottery tickets, that he was denied an application, or that he was prohibited from selling State lottery tickets in the same manner as grocery stores and other retailers. Thus, Mudarri has failed to show any unfairness in the State's allowing authorized grocery stores and retailers to sell State lottery tickets or that such practice has any bearing on his unsupported claim of a "fundamental right" to operate private electronic scratch ticket games.
¶ 59 Nor has the Tribe's operation of electronic scratch ticket games at its tribal casino violated the Washington Constitution Privileges and Immunities Clause. The Privileges and Immunities Clause applies to only "citizen[s], class[es] of citizens, or corporation[s]"; it specifically excludes "municipal" corporations from its scope. Wash. Const. art. I, § 12. Thus, contrary to Mudarri's argument, the plain language of our State Constitution's Privileges and Immunities Clause applies to individual citizens; it does not apply to governmental entities such as cities and counties, even though governmental entities are generally composed of individual citizens. See Locke v. City of Seattle, 162 Wash.2d 474, 482, 172 P.3d 705 (2007); City of Spokane v. Spokane County, 179 Wash. 130, 136, 36 P.2d 311 (1934).
¶ 60 Also composed of individual citizens, the Tribe itself is a federally recognized sovereign nation. See United States v. United States Fid. & Guar. Co., 309 U.S. 506, 512, 60 S.Ct. 653, 84 L.Ed. 894 (1940). In this regard, the Tribe, a political entity, is neither a "citizen" nor a "class of citizens" under article 1, section 12, of the Washington Constitution.[33] Thus, by entering into a gaming compact with the Tribe, the State is not conferring a privilege to "citizen or a class of citizens" within the plain meaning of the Privileges and Immunities Clause. Nor is the State denying Mudarri a privilege that it accords another "citizen or class of citizens."[34]
¶ 61 We hold, therefore, that the Tribe's ability to operate electronic scratch ticket games under the State-Tribe Compact does not violate Mudarri's constitutional privileges and immunity rights; therefore, the State is entitled to judgment as a matter of law. *170 Accordingly, we affirm the trial court's grant of summary judgment to the State on this ground.

IV. Mudarri's Other Requests for Relief

A. Equitable Estoppel
¶ 62 Mudarri contends that "he relied to his detriment on the State fairly and equitably administering gambling laws." Br. of Appellant at 44. He asserts that the State misrepresented its capacity to consider authorizing electronic scratch tickets in the private sector. As damages, he "seeks either the technology or the value of the technology in operation [by the Tribe] in Fife, during the period of use while the [tribal] land was held in fee." Br. of Appellant at 44. Mudarri bases his equitable estoppel claim on his assumption that his other arguments and assertions on appeal are valid. But in light of our affirmance of the trial court's dismissal of his other claims, his equitable estoppel argument also fails.
¶ 63 Equitable estoppel "is not available for offensive use by plaintiffs." Greaves v. Med. Imaging Sys., Inc., 124 Wash.2d 389, 397, 879 P.2d 276 (1994) (internal quotation marks omitted). Equitable estoppel "is available only as a `shield' or defense"; it cannot be used as a "sword." Klinke v. Famous Recipe Fried Chicken, Inc., 94 Wash.2d 255, 259, 616 P.2d 644 (1980) (quoting Tiffany Inc. v. W.M.K. Transit Mix, Inc., 16 Ariz.App. 415, 493 P.2d 1220 (1972)). As plaintiff, therefore, Mudarri cannot affirmatively assert that the State is equitably estopped from preventing his proposed operation of electronic scratch ticket games. Holding, therefore, that the State is entitled to summary judgment as a matter of law, we affirm the trial court's dismissal of Mudarri's equitable estoppel claim.

B. Attorney Fees
¶ 64 Mudarri also requests attorney fees and costs on appeal under RCW 4.84.350. But RCW 4.84.350(1) allows an award of costs only to the party that substantially prevails on review. Because the State, not Mudarri, has prevailed on appeal,[35] Mudarri is not entitled to fees and costs on appeal. Thus, we deny his request for attorney fees and costs on appeal.
¶ 65 We affirm the trial court's summary judgment dismissal of Mudarri's action.
I concur: QUINN-BRINTNALL, J.
ARMSTRONG, P.J., concurs in the result.
NOTES
[1] The "State-Tribe Compact" refers to the gaming compact into which the State of Washington entered with the Puyallup Tribe on May 28, 1996, under Section 11 of the federal Indian Gaming Regulatory Act of 1988, Pub.L. 100-497, 25 U.S.C. § 2710, and RCW 9.46.360.
[2] The "delegation doctrine" prohibits delegation of legislative authority to a non-legislative branch of government. See Wash. Const. art. II, § 1; Sackett v. Santilli, 146 Wash.2d 498, 504, 47 P.3d 948 (2002) ("[T]he Legislature is prohibited from delegating its purely legislative functions.") (citations omitted).
[3] Mudarri's brief simply asserts, without elaboration: "The Governor negotiated special tax treatment in favor of the tribe in violation of Washington Constitution article VII § 1." Br. of Appellant at 36, citing Clerk's Papers (CP) 431-35.
[4] Mudarri does not specify whether he bases his equal protection claim on the federal or the state Constitution. U.S. Const. amend. XIV, § 1; Wash. Const. art. I, § 12. See Analysis, II.B.1.
[5] U.S. Const. amend. XIV, § 1; Wash. Const. art. I, § 3.
[6] Wash. Const. art. I, § 12.
[7] See CR 19(b).
[8] State of Wash. v. The Confederated Tribes of the Chehalis Reservation, No. C-95-1805-FVS, 1997 U.S. Dist., LEXIS 24184 (W.D.Wash. Sept. 26, 1997). The federal Indian Gaming Regulatory Act authorizes tribal gaming that is not prohibited by federal law and that is conducted in a state that does not prohibit such gaming activity. 25 U.S.C. § 2701(5). More specifically, federal law permits tribal Class III gaming (such as scratch tickets) if the gaming is located in a state that permits such gaming and is conducted in accordance with a state-tribe compact. 25 U.S.C. § 2701(d)(1)(B) and (C).
[9] The federal Indian Gaming Regulatory Act, 25 U.S.C. § 2701.
[10] Tribal attorneys appeared on the Tribe's behalf, however, for the limited purpose of supporting the State's motion to dismiss.
[11] CR 19; RCW 7.24.110. The trial court entered this order on December 21, 2005.
[12] The trial court issued its opinion on May 18, 2006. The trial court filed its order granting summary judgment to the State on July 21, 2006. Although the trial court did not cite CR 12(b)(6), it appears to have dismissed Mudarri's remaining claims for failure to state a claim on which relief can be granted, the grounds provided in this rule.
[13] To describe American Indian tribes' unique political status, courts commonly refer to them as "domestic dependent nations": "Indian tribes are domestic dependent nations that exercise inherent sovereign authority over their members and territories." Okla. Tax Comm'n, 498 U.S. at 509, 111 S.Ct. 905 (citation omitted); see also Wright v. Colville Tribal Enter. Corp., 159 Wash.2d 108, 112, 147 P.3d 1275 (2006). Although this term may appear somewhat dated by contemporary standards, 177 years ago, the United States Supreme Court originally explained the concept of Indian tribes as "domestic dependent nations" as follows:

The condition of the Indians in relation to the United States is perhaps unlike that of any other two people in existence....
The Indian territory is admitted to compose a part of the United States. In all our maps, geographical treatises, histories, and laws, it is so considered. In all our intercourse with foreign nations, in our commercial regulations, in any attempt at intercourse between Indians and foreign nations, they are considered as within the jurisdictional limits of the United States, subject to many of those restraints which are imposed upon our own citizens. They acknowledge themselves in their treaties to be under the protection of the United States; they admit that the United States shall have the sole and exclusive right of regulating the trade with them, and managing all their affairs as they think proper....
Though the Indians are acknowledged to have an unquestionable, and, heretofore, unquestioned right to the lands they occupy, until that right shall be extinguished by a voluntary cession to our government; yet it may well be doubted whether those tribes which reside within the acknowledged boundaries of the United States can, with strict accuracy, be denominated foreign nations. They may, more correctly, perhaps, be denominated domestic dependent nations. They occupy a territory to which we assert a title independent of their will, which must take effect in point of possession when their right of possession ceases.... They and their country are considered by foreign nations, as well as by ourselves, as being so completely under the sovereignty and dominion of the United States, that any attempt to acquire their lands, or to form a political connexion with them, would be considered by all as an invasion of our territory, and an act of hostility.
These considerations go far to support the opinion, that the framers of our constitution had not the Indian tribes in view, when they opened the courts of the union to controversies between a state or the citizens thereof, and foreign states.
Cherokee Nation v. Georgia, 5 Pet. 1, 30 U.S. 1, 16-18, 8 L.Ed. 25 (1831) (emphasis added).
[14] Examination of the first and second CR 19(b) factors is futile: Mudarri was not a party to the State-Tribe Compact, and the Tribe (which is a party to the Compact) cannot be forced to join his lawsuit. The trial court could not consider, let alone attempt to lessen, prejudice to the Tribe as the non-joined party (CR 19(b)(1) and (2)) because, as the trial court correctly noted, it lacked jurisdiction to adjudicate the validity of the State-Tribe Compact and to enter a judgment in the Tribe's absence.

As for the fourth factor, Mudarri's lack of alternative remedies does not control because, again, he cannot force the Tribe to waive its sovereign immunity and to submit to his lawsuit against it. We acknowledge the Ninth Circuit's admonition that where there is "no alternative forum available to the plaintiff, the court should be `extra cautious' before dismissing the suit." Makah Indian Tribe v. Verity, 910 F.2d 555, 560 (9th Cir.1990). We further note that in affirming the trial court's dismissal of Mudarri's State-Tribe Compact related claims for nonjoinder of the Tribe as an indispensable party, Mudarri has no legal avenue to challenge the State-Tribe Compact in state court. Such a result, however, does not mean that we must reverse the trial court's summary judgment dismissal of Mudarri's State-Tribe Compact related claims.
Although "[s]overeign immunity may leave a party with no forum for its claims," the "lack of an alternative forum does not automatically prevent dismissal of a suit" based on sovereign immunity. Makah, 910 F.2d at 560 (citing Lomayaktewa v. Hathaway, 520 F.2d 1324, 1326 (9th Cir.1975); Wichita and Affiliated Tribes of Okla. v. Hodel, 788 F.2d 765, 777 (D.C.Cir. 1986)).
[15] We recently affirmed on similar grounds a trial court's summary judgment dismissal of a Puyallup Tribe member's state court lawsuit against the State and the Tribe. We held that: (1) the Tribe had not waived its sovereign immunity; (2) therefore, the Tribe could not be joined as a party; (3) the Tribe was an indispensable party to the plaintiff's suit; and (4) the action could not proceed in the absence of this indispensable party. Matheson, 139 Wash.App. 624, 161 P.3d 486. That dismissal of Matheson's lawsuit left him without a remedy did not, however, revive his action.
[16] Acknowledging that the trial court did not similarly characterize all three of these claims as being related to the State-Tribe Compact, we base our affirmance of the trial court's dismissal of these other claims on alternative indispensable-party grounds, grounds that the trial court did not articulate. See Gildon, 158 Wash.2d at 494-95, 145 P.3d 1196.
[17] Mudarri is correct to the extent that the Tribe's Emerald Queen Casino was previously located on fee simple land. But this is no longer the case: After the trial court granted summary judgment to the State and dismissed Mudarri's lawsuit, the United States Government put this land into a trust for the benefit of the Tribe, which status continues. Pub.L. 109-224, § 1382, 120 Stat. 376 (2006).
[18] The State responds:

[The] IGRA [Indian Gaming Regulatory Act] does not require any demonstration of either tribal jurisdiction or trust status in order to authorize tribal gaming facilities to be located on land that is entirely within the external boundaries of a tribe's reservation.
Br. of Resp't at 49 (citing 25 U.S.C. § 2710).
[19] Mudarri notes that the "legislature has never approved by super majority electronic scratch ticket gaming for the tribes, or for any person, organization, or entity." Br. of Appellant at 25 (citing CP at 449).
[20] Br. of Appellant at 36 (citing CP 428-30).
[21] See Zip game explanation in Analysis Section III.A.2, infra.
[22] Historically, Washington State has not allowed private lotteries. See State v. Louie, 139 Wash. 430-32, 247 P. 728 (1926).
[23] The Zip player was not required to scratch the paper ticket.
[24] Mudarri never applied to be a licensed state Zip game retailer.
[25] We further note that there are differences between Mudarri's proposed private electronic scratch ticket game and the now-defunct state Zip game. For instance, the Zip game had paper tickets that electronic terminals read; Mudarri's proposed game would not have paper tickets.
[26] Again, Mudarri does not specify whether he bases his equal protection claim on the federal or the state Constitution. The equal protection clauses of the United States Constitution, amendment XIV, section 1, and the Washington Constitution, article I, section 12 are substantially identical. State v. Shawn P., 122 Wash.2d 553, 559-60, 859 P.2d 1220 (1993). In State v. Gunwall, 106 Wash.2d 54, 61-62, 720 P.2d 808 (1986), our Supreme Court enumerated six nonexclusive factors for determining whether the Washington State Constitution extends broader rights to citizens than does the federal constitution.

But if a party fails to provide state constitutional analysis based on these six nonexclusive Gunwall factors, we will not address state constitutional grounds. Campos v. Dep't Labor & Indus., 75 Wash.App. 379, 385, 880 P.2d 543 (1994) (citing First Covenant Church v. Seattle, 120 Wash.2d 203, 224, 840 P.2d 174 (1992)), review denied, 126 Wash.2d 1004, 891 P.2d 38 (1995). Because Mudarri fails to argue that the State constitution's equal protection applies and he does not present any analysis based on the Gunwall factors, we analyze his equal protection argument solely under the federal constitution.
[27] On the contrary, it is the State-Tribe Compact, created under federal law following a federal lawsuit, which Mudarri complains confers greater gaming rights on the Tribe than state law confers on him. Again, we cannot review the validity of the State-Tribe Compact, which is not properly before us.
[28] Under IGRA, the Tribe can conduct a lottery because the State has authority to conduct a lottery. See 25 U.S.C. § 2710 60(1)(B) (tribes may engage in gaming that the State permits). But gaming rights granted to Indian tribes under IGRA do not automatically transfer to private individuals. See Tworek v. United States, 46 Fed. Cl. 82 (2000) (Wisconsin law allowing state and tribes to conduct lotteries does not violate individuals' equal protection rights).
[29] The State of Washington regulates and prohibits private lotteries for profit "to keep the criminal element out of gambling and to promote the social welfare of the people by limiting the nature and scope of gambling activities and by strict regulation and control." RCW 9.46.010.
[30] Our state law is replete with examples of different treatment of governmental entities and individual citizens, to which the equal protection clause does not pertain. For example, cities and counties can establish fire departments, police departments, and courts, and they also have taxing authority. See, e.g., RCW 35.103.010 (acknowledging the authority of cities and towns to have fire departments); RCW 35.66.010 (granting cities authority to establish a police force); RCW 35.20.010 (granting cities authority to establish municipal courts or to contract with a county for court services); RCW 9.46.270 (only the State, a city, town, city-county, or county may tax gambling activity or gambling organizations).
[31] Contrary to Mudarri's claim, engaging in a business, such as gambling, does implicate a fundamental right requiring strict scrutiny review. Br. of Appellant at 42. See Amunrud v. Bd. of Appeals, 158 Wash.2d 208, 220-22, 143 P.3d 571 (2006).
[32] Locke v. City of Seattle, 162 Wash.2d 474, 482, 172 P.3d 705 (2007) (citing Larson v. Seattle Popular Monorail Auth., 156 Wash.2d 752, 757-58, 131 P.3d 892 (2006)).
[33] See supra n. 15.
[34] Further, as we discuss in our analysis of Mudarri's equal protection claim, he is not similarly situated for purposes of Washington gaming statutes and, thus, has no basis for his claim that the statutes unfairly discriminate against him. See supra Analysis, Part III.B.1.
[35] The State does not request attorney fees on appeal.